## PEOPLE v. KUNTZE.

1. SEARCHES AND SEIZURES—WITHOUT WARRANT—PRIOR VALID ARREST—PROBABLE CAUSE—MISDEMEANOR.

Search of car and seizure of contraband therein, made without warrant on public highway and without prior valid arrest, may be valid if arresting officer had probable cause to believe defendants had committed or were in process of committing a felony or if officer had actual knowledge of defendants' commission· of misdemeanor in presence of officer.

2. SAME—WITHOUT WARRANT—TRAFFIC VIOLATION.

Stopping of car for traffic violation does not give officer right to search and seize without a warrant, the latter right depending upon whether officer had probable cause to believe defendants had committed or were in the process of committing a felony or upon whether officer had actual knowledge of defendants' commission of a misdemeanor in presence of officer.

3. SAME—SCOPE OF SEARCH.

The scope of search may be so extensive as to come within constitutional prohibition against "unreasonable searches and seizures," even where the right to search and seize exists (US Const, Am 4; Mich Const 1908, art 2, § 10, as amended in 1952).

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 4, 5, 6] 47 Am Jur, Search and Seizure §§ 18, 19.
[3] 47 Am Jur, Search and Seizure § 52.

4. SAME—PERSONAL OBSERVATION THROUGH CAR WINDOW.

> A State police officer's personal observation through car window of deer leg protruding from beneath seat did not constitute a search (CLS 1956, § 312.9).

5. SAME—PROBABLE CAUSE—FELONY—EVIDENCE.

> A State police officer had probable cause to believe defendants had committed or were in process of committing a felony, and so was justified in ordering them out of car for purposes of search without a warrant, where it had been reported that occupants of a car had been shining deer, that a shot had been heard, defendants had detoured into a farmyard, made furtive movements indicating attempt to stuff an object under front seat of car during delay in responding to police signal to stop, and, when stopped, were discerned to be wearing blood-spattered clothing.

6. SAME—ILLEGAL POSSESSION OF DEER—ARREST—PRIOR INFORMATION.

> State police officer was entitled, before or after arrest, to search defendants and car and to seize evidence of crime of illegal possession of deer, where officer observed deer leg protruding from beneath seat, as he then had actual knowledge of their commission of a misdemeanor in his presence (CLS 1956, § 312.9).

Appeal from Menominee; Brown (Ernest W.), J. Submitted March 9, 1963. (Calendar No. 98, Docket No. 49,788.) Decided November 4, 1963.

William Kuntze, Norman Buckmaster, and David Seanor were convicted of illegal possession of a part of a deer. Affirmed.

*Russell W. Bradley,* Prosecuting Attorney, for the people.

*Doyle & Doyle,* for defendant.

*Amici Curiae:*

*Frank J. Kelley,* Attorney General, and *Robert A. Derengoski,* Solicitor General, for the Attorney General, for affirmance.

*T. Harrison Stanton, Gilbert M. Frimet,* and *Nedwin L. Smokler,* for State Bar of Michigan Committee on Civil Liberties.

*Leo A. Farhat* and *William N. Kritselis,* for State Bar of Michigan Committee on Criminal Jurisprudence, for affirmance.

SOURIS, J.    Defendants were convicted of possession of part of a deer in violation of CLS 1956, § 312.9 (Stat Ann 1958 Rev § 13.1338), a misdemeanor.    Their motion, made before trial and preserved for review, to suppress evidence essential to their conviction on the ground that it had been obtained by an illegal search and seizure in violation of their constitutional rights, was denied.    They appeal, claiming the trial court erred in denying their motion to suppress.

One evening in September of 1960, after nightfall, State Police Troopers Schwab and Righter were proceeding by patrol car to a point west of the village of Daggett in Menominee county to investigate a report that occupants of a car were shining deer[1] in a field and that a shot had been heard.    The report was made at the troopers' police post by a local justice of the peace.    As the officers drove through Daggett, they observed defendants' car and another car traveling just ahead of the patrol car.    A short distance beyond the village limits the officers saw defendants' car turn off onto a side road and thence into a nearby farmyard where the officers said they knew it had no right to be and where its headlights were extinguished.    A few hundred feet beyond the side road onto which defendants had turned, the officers came upon the other car which they had earlier observed in the village.    It had stopped alongside the highway and 2 of its occupants were opening its hood as the officers stopped their patrol car and walked up to them.    The occupants of the car advised

---

[1] See CLS 1956, § 312.10, subd (e), as then amended by PA 1957, No 207 (Stat Ann 1958 Rev § 13.1339) and CLS 1956, § 314.19, as amended by PA 1959, No 74 (Stat Ann 1961 Cum Supp § 13.1368).— REPORTER.

the officers their car was not operating properly and, in response to inquiry by Schwab or Righter, denied they were shining deer in the area. Upon the officers' request, they voluntarily opened the car's trunk so that it could be examined. Finding nothing, the officers returned to their patrol car.

They then noticed that the headlights of defendants' car in the farmyard had been turned on again and that defendants were returning to the highway. The officers pulled off the highway and as defendants' car drove by noticed that it did not have a light illuminating its license plate, in violation of the motor vehicle code.[2] They thereupon re-entered the highway, pulled up along the left side of defendants' car from the rear and signaled defendants to stop by turning on the patrol car's oscillating roof light, hood light, and spotlight and by sounding its horn. When defendants failed to respond to their signals, the troopers swung in behind defendants' car and flashed their spotlight into the rear window of defendants' car as a signal to stop. The spotlight revealed to the officers 2 of the defendants bending forward and moving their shoulders and arms in what seemed to them to be an effort to stuff an object under the front seat on which all the occupants were sitting. The defendants' car then stopped and the patrol car stopped behind it.

Trooper Righter, who had been driving the police car, alighted and approached defendants' car from its left side; his partner, Trooper Schwab, approached it from its right side. Their patrol car's headlights were shining into the rear of defendants' car and both troopers carried flashlights which they shined into the interior of the car. As Schwab approached the defendants, he noticed what looked to him to be blood spots and smears on the shoulders

---

2 CLS 1956, § 257.686 (Stat Ann 1960 Rev § 9.2386).—REPORTER.

and backs of the white sweat shirts of the 2 passengers nearest him and he thereupon ordered them out of the car.

As the 2 passengers got out of the car, Trooper Righter, standing alongside the car on the driver's side, observed in the beams of his flashlight a leg of a deer partially protruding from under the front seat. He ordered the driver out of the car, led him around the car to its right side where Schwab and the other defendants were standing, reached through the open passenger door and extracted a hind quarter of a deer. It is the hind quarter of a deer defendants sought unsuccessfully to have suppressed from evidence on the ground its seizure was illegal.

We need not be diverted in this case by effort to determine whether defendants had been arrested prior to search of their car. Such inquiry perhaps would be appropriate if the only justification for seizure of the deer hind quarter was that it was discovered during a search without a warrant made incidental to a prior valid arrest. *People* v. *Harper,* 365 Mich 494. It would be absurd to suggest in this case that this search and seizure was made only incidental to defendants' arrest for violation of the motor vehicle code. Such a suggestion in this case would require us to disregard significant events which occurred before, during and after the time defendants were chased by the officers and finally stopped.

Aside from those cases in which legality of seizure of evidence depends solely upon the reasonableness of a search without a warrant made incidental to a valid arrest, a prior valid arrest is not essential to a police officer's right to search and seize. Like most State and Federal courts, we have previously held that the validity of a search and seizure made without a warrant does not depend upon a prior valid arrest. *People* v. *Kamhout,* 227 Mich 172;

*People* v. *Bringardner,* 233 Mich 449; *People* v. *Dungey,* 235 Mich 144; *People* v. *Alicki,* 321 Mich 701. See, also, *Carroll* v. *United States* (1925), 267 US 132, 158 (45 S Ct 280, 69 L ed 543, 39 ALR 790), and annotation at 89 ALR2d 715, "Lawfulness of nonconsensual search and seizure without warrant, prior to arrest."

While it is not necessary, therefore, to determine whether or not defendants were formally arrested before the leg of deer was seized, the fact that they had violated the motor vehicle code (without regard to the officers' possible right to stop defendants otherwise) is of some significance to the extent it required the officers in the proper exercise of their duty to stop defendants' car. The officers' right to do so is not questioned; nor can such right be doubted. Having done so, they put themselves in relation to defendants and their car in a place they had a right to be and from such vantage point Trooper Righter observed the commission of a misdemeanor by the defendants in his presence. We may note, parenthetically, that defendants make no claim, such as was made in *People* v. *Roache,* 237 Mich 215; *People* v. *Anders* (1959), 167 Cal App2d 65 (333 P2d 854); *Johnson* v. *State* (1950), 92 Okla Cr 63 (220 P2d 469), that the officers stopped them for a motor vehicle code violation merely as a pretext to afford the officers an opportunity to search defendants or their car. The only evidence received on the motion to suppress was the officers' testimony and from that the trial judge was entitled to find, as he did, that defendants were stopped legally for a traffic violation.

Having lawfully stopped the defendants, the legal propriety of the subsequent search and seizure of the leg of deer (and its admissibility in evidence, *People* v. *Marxhausen,* 204 Mich 559 [3 ALR 1505]) depends upon the information the officers then pos-

sessed and subsequently learned immediately before its seizure (*People* v. *Harper,* 365 Mich 494) for it is that information by which they, and we, must determine whether they had a right to search and seize without a warrant and to what extent that right properly could be exercised. In some cases (*United States* v. *Lefkowitz* [1932], 285 US 452, 463–467 [52 S Ct 420, 76 L ed 877, 82 ALR 775]; *Go-Bart Importing Company* v. *United States* [1931], 282 US 344, 356–358 [51 S Ct 153, 75 L ed 374]; *People* v. *Taylor,* 341 Mich 570, 576 [wherein the Court carefully noted that the officers searched "no more of the premises than what was within the immediate view and control of the defendant"]) it is necessary to determine not only whether there was *any right* to search and seize without a warrant but also whether the *scope* of the search and seizure actually made transgressed the prohibition against "unreasonable searches and seizures" contained in the Federal Constitution's Fourth Amendment and our (1908) State Constitution's art 2, § 10. In this case, however, we need concern ourselves only with determination of the officers' *right* to search defendants' car and to seize the evidence of crime it contained, considering the very limited scope of the search and seizure actually made.

Trooper Righter's first observation of the deer leg protruding from underneath the front seat of defendants' car was not a search as that term normally is defined in search and seizure cases. Many authorities have so held, only some of which need be noted. *People* v. *Kamhout,* 227 Mich 172, and cases cited at 187; *Haerr* v. *United States* (CCA 5, 1957), 240 F2d 533; and *Petteway* v. *United States* (CCA 4, 1958), 261 F2d 53. See, also, *People* v. *Martin* (1955), 45 Cal2d 755 (290 P2d 855), where California's supreme court held that looking through a window of a building does not constitute an un-

reasonable search, citing *State* v. *Hawkins* (1951), 362 Mo 152 (240 SW2d 688); *People* v. *Exum* (1943), 382 Ill 204 (47 NE2d 56); *United States* v. *Lee* (1927), 274 US 559 (47 S Ct 746, 71 L ed 1202), among other cases. The deer leg Trooper Righter saw in defendants' illegal possession was then observable by him, in the words of the Court's opinion in *Kamhout, supra,* at 188, "from the exercise of his own senses." However, defendants claim that Righter could not have observed their illegal possession of the deer leg from his vantage point on the left side of the car but for Trooper Schwab's prior illegal removal of 2 of the defendants from the right side of the front seat. Their claim that Schwab's conduct was illegal does not stand analysis.

When Schwab approached the defendants' car from the right, he observed the blood-spattered appearance of 2 of the defendants and, at that moment, without any more information than he had, he was fully justified in ordering them out of the car, as he did, for the purpose of searching them. The reasonableness of such conduct is established in this case not alone by Schwab's observation of defendants' bloody clothing, but also by the defendants' brief detour into the farmyard, their delay in responding to the police officers' signals to stop their car, and the furtive actions of the blood-spattered defendants during the chase from which actions Schwab believed they were concealing something underneath the front seat of the car. All this considered, Schwab had probable cause for believing defendants had committed a felony or were in the process of committing a felony and, therefore, he was entitled to arrest defendants even without a warrant, and, either before or after formal arrest, he was entitled to search them. *People* v. *Dungey,* 235 Mich 144; *People* v. *Bringardner,* 233 Mich 449.

Trooper Schwab having lawfully asserted this right of search by ordering the 2 defendants sitting on the right side of the seat to get out of the car, Trooper Righter was entitled to observe by "exercise of his own senses" whatever thereby was disclosed. *People* v. *Alicki,* 321 Mich 701. What was disclosed was defendants in the act of committing a misdemeanor in Righter's presence by their possession. of the leg of a deer in violation of CLS 1956, § 312.9 (Stat Ann 1958· Rev § 13.1338). He was then entitled not only to arrest defendants without a warrant for commission of a misdemeanor in his presence, CL 1948, § 764.15 (Stat Ann 1954 Rev § 28.874), but he was also entitled, before or after formal arrest, to search defendants and their car and to seize the evidence of their crime. *People* v. *Alicki, supra.* It should not be implied from what has been said that search and seizure without a warrant may be made merely on probable cause to believe a misdemeanor is being committed. In this case Trooper Righter had actual knowledge, not just probable cause to believe, that a misdemeanor was in fact being committed in his presence.

We acknowledge the assistance of briefs as *amici curiae* filed by the attorney general and the civil liberties and criminal jurisprudence committees of the State Bar of Michigan at the Court's request.

On the record made before the trial court, it cannot be said that the trial judge erred in denying defendants' motion to suppress and in convicting defendants. His order must, therefore, be affirmed.

KELLY, BLACK, KAVANAGH, and SMITH, JJ., concurred with SOURIS, J.

CARR, C. J., and DETHMERS, J., concurred in result.

O'HARA, J., did not sit.