PEOPLE v WHALEN

1. SEARCHES AND SEIZURES—REASONABLENESS—CONSTITUTIONAL LAW
    —FOURTH AMENDMENT.

    A basic constitutional rule is that searches conducted outside the
    judicial process, without prior approval by judge or magistrate,
    are per se unreasonable under the Fourth Amendment—subject
    only to a few specifically established and well delineated excep-
    tions; however, before the rule can be applied, and the excep-
    tions to it come into play, it first must be established from the
    facts before the court, that a search did in fact take place for
    Fourth Amendment purposes (US Const, Am IV).

2. SEARCHES AND SEIZURES—PRIVACY—PUBLIC EXPOSURE—CONSTITU-
    TIONAL LAW—FOURTH AMENDMENT.

    There has evolved a test, applied by the courts, to determine
    whether or not a search, by Fourth Amendment standards, has
    indeed taken place which, simply put, is that if an individual
    has a reasonable expectation of privacy in the area searched, or
    the materials seized, a search has been conducted; but what a
    person knowingly exposes to the public, even in his own home
    or office, is not subject to Fourth Amendment protection (US
    Const, Am IV).

3. SEARCHES AND SEIZURES—OFFICERS—PLAIN VIEW—CONSTITUTIONAL
    LAW.

    Seizure of objects within the plain view of an officer, lawfully in a
    place where he had a right to be, are not proscribed by the
    Constitution.

4. SEARCHES AND SEIZURES—OFFICERS—PLAIN VIEW—FLASHLIGHT.

    Search of an automobile by a police officer with the aid of a
    flashlight is legal under the plain view doctrine; the plain view
    rule does not slink away at sunset to emerge again at the break

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 68 Am Jur 2d, Search and Seizure §§ 2–6.
[4] 68 Am Jur 2d, Search and Seizure § 25.
[5, 6] 68 Am Jur 2d, Search and Seizure §§ 2–6, 16.
[7] 58 Am Jur, Witnesses §§ 866, 868.
[8] 58 Am Jur 2d, New Trial § 51.

of day but before the rule can be invoked, it must be shown that the officer was in a place where he had a right to be.

5. SEARCHES AND SEIZURES—AUTOMOBILES—REASONABLENESS—POLICE.

The following rules apply with respect to stopping, searching and seizing of motor vehicles: (1) reasonableness is the test that is to be applied for both the stop of, and the search of moving motor vehicles, (2) said reasonableness will be determined from the facts and circumstances of each case, (3) fewer foundation facts are necessary to support a finding of reasonableness when moving vehicles are involved, than if a house or a home were involved, and (4) a stop of a motor vehicle for investigatory purposes may be based upon fewer facts than those necessary to support a finding of reasonableness where both a stop and a search is conducted by the police.

6. SEARCHES AND SEIZURES—REASONABLENESS—AUTOMOBILES—PLAIN VIEW—FOURTH AMENDMENT—CONSTITUTIONAL LAW—EVIDENCE.

A brief stop of a vehicle for purposes of identification was the appropriate thing to do and that most reasonable in the light of the facts known to an officer at the time where the car fit the general description given to police of a getaway vehicle, the driver also fit the description, and the car was stopped shortly after a robbery had occurred, on a highway frequently used by criminals in that area for purposes of fleeing to another state; accordingly, the plain view doctrine applies to this case and no "search" for Fourth Amendment purposes took place when the beam of an officer's flashlight revealed the defendant lying on the rear seat with open jewelry boxes, money, a wastebasket full of jewelry and other articles scattered around him; the evidence seized was properly admitted at trial (US Const, Am IV).

7. CRIMINAL LAW—DISTRICT AND PROSECUTING ATTORNEYS—JURY— WITNESSES—CREDIBILITY—PREJUDICE.

In criminal cases the prosecuting attorney is a public officer, acting in a quasi-judicial capacity; juries very properly regard him as unprejudiced, impartial, and non-partisan; and insinuations thrown out by him regarding the credibility of witnesses for the defense are calculated to prejudice the defendant.

8. CRIMINAL LAW—DISTRICT AND PROSECUTING ATTORNEYS—CROSS-EX- AMINATION—WITNESSES—CHARACTER—OBJECTIONS—DISCRETION —FAIR TRIAL—NEW TRIAL.

It was an abuse of discretion on the part of the trial judge to deny an objection to a prosecutor's entire line of questioning

raised by defense counsel where the prosecutor's cross-examination had *no legal connection* with the question being tried, the end to which it was obviously directed was utterly indefensible and resulted in an unfair trial, it went far beyond the improprieties censured by the Michigan Supreme Court in another case, and it did no more than put in front of the jury the fact that he, the prosecutor, *personally* felt two witnesses to be of disreputable character and unworthy of belief; as a fair trial was certainly not had, a new trial will be required.

Appeal from Court of Appeals, Division 2, Quinn, P. J., and Fitzgerald and Van Valkenburg, JJ., affirming Lenawee, Rex B. Martin, J. Submitted October 3, 1973. (No. 9 October Term 1973, Docket No. 54,199.) Decided December 18, 1973.

John Joseph Whalen was convicted of breaking and entering and larceny from a building. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Reversed in part, affirmed in part and remanded for a new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Harvey A. Koselka,* Prosecuting Attorney *(Prosecuting Attorneys Appellate Service* [by *Thomas R. Lewis* and *James D. Hunter],* of counsel), for the people.

*Neil H. Fink,* for defendant on appeal.

T. M. KAVANAGH, C. J. In an unpublished opinion, *People v Whalen,* No. 10764 (1972) the Court of Appeals affirmed this defendant's convictions of breaking and entering[1] and larceny from a building.[2] We granted leave, 388 Mich 770 (1972) to consider three issues:

1. Whether due to the warrantless stop and search of

---

[1] MCLA 750.110; MSA 28.305

[2] MCLA 750.360; MSA 28.592

the automobile in which defendant was a passenger,
which stop was part of a comprehensive scheme to
search all automobiles on the highway—a roadblock—
defendant's Fourth Amendment right to be free from
unreasonable search and seizure had been violated;

2. Whether error was committed in allowing the
prosecutor to impeach defendant's alibi witnesses on
matters irrelevant to the instant case, ostensibly for the
purpose of showing their personal bias and prejudice
towards the person of the prosecutor; and

3. Whether the prosecutor wrongfully commented in
his closing argument on the defendant's right not to
testify on his own behalf.

## FACTS

In March of 1969 a jewelry store in Adrian,
Michigan was forcibly entered and jewelry, cash
and other items taken. A co-owner of the store
surprised three men in the act, and they forced
their way past him to make their escape. A 12-
year-old witness saw 4 or 5 men get away in a
large white "Cadillac". A radio report was issued
by the local police, advising of the robbery and
asking officers to look for a large white car, possi-
bly a Cadillac, with three dark complected, possi-
bly Mexican subjects in the car, one of whom was
wearing a tan jacket.

Pursuant to the radio report, the State Police
decided to set up a roadblock on US-223 just north
of the Ohio border. Accordingly, one patrol car,
which was in the vicinity in conjunction with a
traffic accident, was ordered to proceed to that
location and set up a roadblock. The patrol car
proceeded south on Head-O-Lake Road and stopped
at the intersection of that road and US-223 for a
stop sign. Upon stopping, the two officers within
the car noticed a white Continental and a dark
Corvette traveling south on US-223 toward the

Ohio border. The officers pulled out on to US-223 and pulled alongside these two vehicles, shining their flashlight into the faces of the drivers to get a better look. The driver of the Continental was dark complected and was wearing a tan jacket. The officers indicated for the drivers of the vehicles to stop, and after some confusion and difficulty, both cars pulled to the side of the road just past the Ohio line.

The driver of the Corvette was checked out and released by one officer while the other patrolman questioned the driver of the Continental, who had gotten out of his car to speak with him. Walking back to the Continental, after releasing the Corvette, the first officer shone his flashlight into the interior of the white Continental. His beam revealed the defendant lying on the rear seat, and the third defendant on the seat in the front of the vehicle. Around the defendant was scattered open jewelry boxes, money, a wastebasket full of jewelry and other articles. All three men were arrested and the car searched. The defendant was tried and convicted.

## ISSUE I—The Fourth Amendment Claim

Appellant asserts that under *Mapp v Ohio,* 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081; 84 ALR2d 933 (1961) the evidence obtained by the police as a result of the search of the vehicle in which he was riding should be suppressed as being the result of an illegal search and seizure. The search in question was conducted without a warrant. Since the police were going to search all vehicles traveling along US-223, he asserts that probable cause sufficient to stop and search any one particular vehicle must therefore be lacking. The officers candidly

admitted that this vehicle was stopped as part of a systematic roadblock.

As stated by the United States Supreme Court in *Coolidge v New Hampshire,* 403 US 443; 91 S Ct 2022; 29 L Ed 2d 564 (1971) the basic constitutional rule in this area is that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.

However, before the above rule can be applied, and the exceptions to it come into play, it first must be established from the facts before the court, that a search did in fact take place for Fourth Amendment purposes.

From *Katz v United States,* 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967) there has evolved a test, applied by the courts, to determine whether or not a search, by Fourth Amendment standards, has indeed taken place. Simply put, if an individual has a reasonable expectation of privacy in the area searched, or the materials seized, a search has been conducted. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz, supra,* 351.

Thus seizure of objects within the plain view of an officer, lawfully in a place where he had a right to be, are not proscribed by the Constitution. *United States v Lee,* 274 US 559; 47 S Ct 746; 71 L Ed 1202 (1927). This plain view doctrine has been applied by this Court to cases involving the stopping and subsequent "search" of a moving vehicle. In *People v Kuntze,* 371 Mich 419; 124 NW2d 269 (1963), officers in a scout car were proceeding to a point west of Daggett, Michigan to investigate a

report that occupants of a car were shining deer in a field and that a shot had been heard. Coming upon the defendant's vehicle within the Village of Daggett, the officers becoming suspicious, pulled the defendant's car over to the side of the road. Walking over to the stopped vehicle, the officers ordered the passengers out of the car, shone a flashlight into the interior, and saw the leg of a deer protruding out from under the front seat. This Court in deciding the Fourth Amendment question present in that case, stated:

"Trooper Righter's first observation of the deer leg protruding from underneath the front seat of defendant's car *was not a search as that term normally is defined in search and seizure* cases." *People v Kuntze, supra,* p 425.

Although this case was decided before the *Katz* decision, *supra,* it has been followed by our Court, and the rule it espouses followed by our Nation's highest Court in cases following that decision. See *People v Charles D. Walker,* 385 Mich 565; 189 NW2d 234 (1971); *People v Tisi,* 384 Mich 214; 180 NW2d 801 (1970) (citing as authority *People v Kuntze, supra); Harris v United States,* 390 US 234; 88 S Ct 992; 19 L Ed 2d 1067 (1968).

At oral argument, the appellant asserted that the plain view doctrine should not be applied to this case, as the "view" was obtained solely with the aid of the officer's flashlight. Without the aid of the flashlight, he asserts, the officer could not have seen into the interior of the vehicle and thus the defendant and the jewelry were not, as the Court noted in *Kuntze, supra,* observable by the "exercise of his own senses." (p 427.)

As noted above, *Kuntze* involved a search with the aid of a flashlight. The Court ruled that search

legal under the plain view doctrine. The Court also notes that this very issue has recently been decided and discussed in several of the Federal Circuit Courts. In *United States v Booker*, 461 F2d 990, 992 (CA 6, 1972) the Court ruled that "[s]ince it would not constitute a search for the officer to observe objects in plain view in the automobile in daylight, it ought not to constitute a search for him to flash a light in the car as he was walking past it in the night season."

Also, in *Marshall v United States*, 422 F2d 185, 189 (CA 5, 1970) the Court stated:

"We do not hold, of course, that *every* use of a flashlight is not a search. A probing, exploratory quest for evidence of crime is a search governed by Fourth Amendment standards whether a flashlight is used or not. The mere use of a flashlight, however, does not magically transmute a non-accusatory visual encounter into a Fourth Amendment search. When the circumstances of a particular case are such that the police officer's observation would not have constituted a search had it occured in daylight, then the fact that the officer used a flashlight to pierce the nighttime darkness does not transform his observation into a search. Regardless of the time of day or night, the plain view rule must be upheld where the viewer is rightfully positioned, seeing through eyes that are neither accusatory nor criminally investigatory. The plain view rule does not go into hibernation at sunset."

It does not appear to us now that our original holding in *Kuntze, supra,* was erroneous, or that the rule we espoused then has changed over the last ten years. We too feel that the plain view rule does not slink away at sunset to emerge again at the break of day. *United States v Lee, supra.*

But, as we noted in *People v Charles D. Walker*, 385 Mich 565; 189 NW2d 234 (1971) before the rule can be invoked, it must be shown that the

officer was in a place where he had a right to be. To answer the question of whether or not the officer in the instant case was rightfully positioned, this Court must now decide whether the police could lawfully stop the vehicle in question under the circumstances. If they could, the question is answered in the affirmative.

The leading case involving the right of the police to stop an individual for purpose of investigating possible criminal behavior is *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). In *Terry,* the United States Supreme Court stated that when an officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot, he may make an initial investigatory stop of that suspect.

Then in *Adams v Williams,* 407 US 143; 92 S Ct 1921; 32 L Ed 2d 612 (1972) that Court further explained its precise holding in *Terry.* The Court stated:

"In *Terry* this Court recognized that 'a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.' [392 US] *Id.,* at 22 [88 S Ct at 1880]. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. See *id.,* at 23 [88 S Ct, at 1881]. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. *Id.,* at 21–22 [88 S Ct, at 1879–1880]; see *Gaines v Craven,* 448 F. 2d 1236 (CA 9, 1971); *United States v Unverzagt,* 424 F. 2d 396 (CA 8, 1970)."

With the *Terry*[3] rule set forth above, there must also be considered the current rule governing the searches of motor vehicles. This latter rule is set forth by the United States Supreme Court in *Cady v Dombrowski,* 413 US 433; 93 S Ct 2523; 37 L Ed 2d 706 (1973). In *Cady,* the Court states:

"The ultimate standard set forth in the Fourth Amendment is reasonableness. In construing this command, there has been general agreement that 'except in certain carefully defined classes of cases, a search of private property without proper consent is "unreasonable" unless it has been authorized by a valid search warrant.' *Camara v Municipal Court,* 387 US 523, 528–529, 87 S Ct 1727, 1731, 18 L Ed 2d 930 (1967). See *Coolidge v New Hampshire,* 403 US 443, 454–455, 91 S Ct 2022, 2031, 29 L Ed 2d 564 (1971). One of the class of cases which constitutes at least a partial exception to this general rule is automobile searches. Although vehicles are 'effects' within the meaning of the Fourth Amendment, 'for purposes of the Fourth Amendment there is a constitutional difference between houses and cars.' *Chambers v Maroney,* 399 US 42, 52, 90 S Ct 1975, 1981, 26 L Ed 2d 419 (1970). See *Carroll v United States,* 267 US 132, 153–154, 45 S Ct 280, 69 L Ed 543 (1925). In *Cooper v California,* 386 US 58, 59, 87 S Ct 788, 790, 17 L Ed 2d 730 (1967), the identical proposition was stated in different language:

" 'We made it clear in *Preston [v United States,* 376 US 364; 84 S Ct 881; 11 L Ed 2d 777 (1964)] that whether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case and pointed out, in particular, that searches of cars that are constantly movable may make the search of a car without a warrant a reasonable one although the results might be the opposite in a search of a home, a store, or other fixed piece of property. 376 US, at 366–367 [84 S Ct, at 882–883].' "

---

[3] For an application of this rule to facts substantially similar to those presented in the instant case, see *United States v Hernandez,* 486 F2d 614 (CA 7, Oct 3, 1973, No 72-1981).

A review of the cases cited above leads this
Court to conclude that the following rules apply
today with respect to the stopping, searching and
seizing of motor vehicles and their contents:

1. Reasonableness is the test that is to be ap-
plied for both the stop of, and the search of mov-
ing motor vehicles.

2. Said reasonableness will be determined from
the facts and circumstances of each case.

3. Fewer foundation facts are necessary to sup-
port a finding of reasonableness when moving
vehicles are involved, than if a house or a home
were involved.

4. A stop of a motor vehicle for investigatory
purposes may be based upon fewer facts than
those necessary to support a finding of reasonable-
ness where both a stop and a search is conducted
by the police.

Applying the aforesaid rules to this case, we find
that the stop of this vehicle was justified and
reasonable under all the circumstances. The car fit
the general description given the police of the
getaway vehicle. The driver was dark complected
and wearing a tan jacket, also fitting the descrip-
tion. The car was stopped shortly after the robbery
had occurred, on a highway frequently used by
criminals in that area for purposes of fleeing to
another state. We agree with the Court in *Adams,
supra,* that the Fourth Amendment does not re-
quire a policeman to simply shrug his shoulders
and allow a crime to occur or a criminal escape.
Under these circumstances a brief stop of the
vehicle for purposes of identification was the ap-
propriate thing to do and that most reasonable in
light of the facts known to the officer at the time.

We therefore hold that the stop of this vehicle
was appropriate in light of the principles set forth

above. Accordingly, the plain view doctrine applies to this case and no "search" for Fourth Amendment purposes took place. The evidence seized was properly admitted at trial. In light of this holding we need not decide whether a search of the vehicle would have been appropriate under the circumstances, nor do we decide if a stop of all cars as part of a systematic roadblock would be reasonable absent similar foundation facts respecting the reasonableness of stopping an individual car.

## ISSUE II—The Cross-Examination

The defendant's defense at trial was alibi. He did not take the stand and testify in his own behalf. However, he presented two alibi witnesses, Mrs. Reese and Mrs. Cone, who testified to the effect that the defendant was present at a lounge, the Orbit Inn, at the time of the burglary.

In his cross-examination of Mrs. Cone, the prosecutor asked if she had ever shared a bed with Mrs. Reese, inferring a possible lesbian relationship between the two alibi witnesses. Over objection, he continued his cross-examination of this witness with reference to a prior contested divorce action in which he, the prosecutor, had represented Mrs. Reese's husband successfully. During those divorce proceedings the prosecutor had severely grilled both alibi witnesses for a considerable length of time.

Again over objection, the prosecutor commenced to impeach the alibi testimony of Mrs. Reese along the same lines. His stated reasons for doing so was to show bias and prejudice on the part of the witnesses. This bias and prejudice, however, was supposedly directed towards the prosecuting attorney personally, and not in his official capacity.

As the Court stated in *People v Cahoon,* 88 Mich 456, 461; 50 NW 384 (1891):

"Zeal in a prosecuting attorney is entitled to the highest commendation, but that zeal must be exercised within proper limits. In civil cases counsel often take too much latitude in the cross-examination of witnesses. Witnesses are entitled to respectful consideration, and it is the duty of courts to see that they are protected from the insinuations and attacks of counsel, whether the insinuation or attack is direct or is in the form of a suggestive question. In criminal cases the prosecuting attorney is a public officer, acting in a *quasi* judicial capacity. Juries very properly regard him as unprejudiced, impartial, and non-partisan; and insinuations thrown out by him regarding the credibility of witnesses for the defense are calculated to prejudice the defendant."

In *People v Rice,* 136 Mich 619; 99 NW 860 (1904) this Court was faced with a situation inverse to that presented in this case. In *Rice, supra,* defense counsel on cross-examination tried to convey to the jury the fact that the prosecution's witness was in reality the person who had initiated the complaint against the defendant and was working hand in glove with the prosecution to secure a conviction in the case.

The Court stated in *People v Rice, supra,* 620–621:

"This method of cross-examination comes directly within the condemnation of *People v Cahoon,* 88 Mich 456 (50 NW 384). Counsel for the defendant cites several cases holding that it is competent to show upon cross-examination the bias of a witness. The attorney for the people does not dispute this proposition. He only objects that the question was not a proper one for that purpose. In none of the cases cited was the cross-examination like this attempted. The testimony offered in those cases relates to the acts or conduct or statements

of the witness tending to show bias or prejudice. This witness has shown no disposition to suppress any facts or statements. Witnesses are entitled to the protection of the court when assailed in this manner. See *People v Gotshall,* 123 Mich 474 (82 NW 274 [1900])."

Finally, this case comes squarely within the unanimous ruling of the Court in *People v Tolewitzke,* 332 Mich 455, 458–459; 52 NW2d 184 (1952). In that case our opinion read:

"Error is claimed with respect to the cross-examination of a defense witness, Eleanor Wilburn, the sister of the complaining witness. Questions were put to this witness by the prosecutor for the purpose of showing that she had sued her husband for divorce more than 2 years before the instant trial and was still living in the same home with him.

"The people in their brief admit that courts have 'properly and consistently held that witnesses have a right to be protected from abuse by improper questioning and gratuitous attacks on character by counsel.' They cite *Rickabus v Gott,* 51 Mich 227 [16 NW 384 (1883)], which was an appeal from a probate order disallowing a will. In that case contestant's counsel suggested that proponent's son was born very soon after her marriage, and counsel was permitted to ask the witness whether he had heard the proponent say so.

"The court held that this testimony had no legal connection with the question being tried, and the end to which it was obviously directed was utterly indefensible and resulted in an unfair trial.

"In *People v Gotshall,* 123 Mich 474, an arson case, the court, after quoting at length from the testimony, said:

" 'While it is the well-settled rule that the previous life and character of a witness may be inquired into to elicit facts which may aid the jury in determining what credence they will attach to his testimony, yet it is the duty of the courts to keep such examinations within reasonable bounds. When it is manifest that the design or effect of the questions is not to elicit facts, but to cast

suspicion upon the character and credibility of the witness, courts must intervene, or trials will result in a miscarriage of justice.'

"In *People v Lieska,* 161 Mich 630 [126 NW 636 (1910)], the Court held that insinuations and questions which have a tendency to prejudice the jury as to the respondent's witnesses and relating to irrelevant matters warrant a reversal on the ground that respondent did not have a fair trial. See, also, *People v Cahoon,* 88 Mich 456, 461; *People v Huff,* 173 Mich 620 [139 NW 1033 (1913)]; and *People v Cords,* 232 Mich 620 [206 NW 541 (1925)].

"Despite the prevalence of divorce, the suggestion that the defendant's witness was living with her husband illicitly during the pendency of a divorce action could easily prejudice the jury, especially in a case of this nature. Regardless of the heinous character of the offense with which defendant was charged he is entitled to a fair trial.

"The conviction is reversed and the case is remanded for a new trial."

This Court can draw no rational distinction between the instant case and the facts presented to the Court in *Tolewitzke, supra.* The cross-examination by the prosecutor in this case also had no legal connection with the question being tried, and the end to which it was obviously directed was utterly indefensible and resulted in an unfair trial. It even went far beyond the improprieties censured by this Court in *Tolewitzke, supra.* It did no more than put in front of the jury the fact that he, the prosecutor, *personally* felt these witnesses to be of disreputable character and unworthy of belief. The prejudicial effect of such remarks by, as we have noted above in *Cahoon, supra,* a quasi-judicial officer is obvious. An objection to this entire line of questioning was raised by defense counsel. It was an abuse of discretion on the part of the trial judge to deny it. As a fair trial was

certainly not had in this case, a new trial will be required.

We take this opportunity to call to the attention of all prosecuting attorneys and defense counsel in this state Canon 7 of our Code of Professional Responsibility governing the members of the Bar of this state.

DR 7—106 states:

"(C) In appearing in his professional capacity before a tribunal, a lawyer shall not:

"(1) State or allude to any matter that he has no reasonable basis to believe is relevant to the case or that will not be supported by admissible evidence.

"(2) Ask any question that he has no reasonable basis to believe is relevant to the case and that is intended to degrade a witness or other person.

"(3) Assert his personal knowledge of the facts in issue, except when testifying as a witness.

"(4) Assert his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused; but he may argue, on his analysis of the evidence, for any position or conclusion with respect to the matters stated herein."

If these rules were as zealously followed as convictions and acquittals were sought by our legal advocates, our entire legal system would benefit. The people of this state would also be saved the time and expense of repeated prosecutions.

## ISSUE III—The Prosecutor's Closing Argument

Because of our resolution of Issue II, a new trial will be required in this case. We feel assured that, if any error was committed in the previous trial, it will not be repeated upon retrial of the case. We

do not pass on whether or not such error was in fact committed.

The Court of Appeals is reversed in part and affirmed in part. The case is remanded back to the trial court for a new trial.

T. E. BRENNAN, SWAINSON, WILLIAMS, LEVIN, and M. S. COLEMAN, JJ., concurred with T. M. KAVANAGH, C. J.

T. G. KAVANAGH, J., concurred in the result.