PEOPLE v GASKILL

PEOPLE v WEAVER

Docket Nos. 47615, 53047. Submitted April 7, 1981, at Grand Rapids.
—Decided June 17, 1981. Leave to appeal applied for.

Billy D. Gaskill and Gary R. Weaver were charged with posses-
sion of marijuana with intent to deliver. Prior to trial, both
defendants moved to suppress certain evidence, which motions
were denied, Branch Circuit Court, Thomas C. Megargle, J.
Defendants separately sought leave to appeal in the Court of
Appeals, which leave was granted. The appeals were consoli-
dated by the Court of Appeals. *Held:*

1. The trial court erred in refusing to suppress evidence
obtained from defendant Weaver prior to apprising him of his
rights pursuant to the holding in *Miranda* and without a
knowing waiver of the right to remain silent.

2. The trial court erred in refusing to suppress evidence
obtained during a search of the trunk of Weaver's vehicle
without a warrant and in the absence of such exigent circum-
stances which would provide an exception to the warrant
requirement. The search was unreasonable because the vehicle
was entirely under police control at the time of the search, the
vehicle was to be stored in the police impoundment lot, and
police were able to and subsequently did secure a search
warrant in less than twenty-four hours from the time of the
stop.

Reversed and remanded.

1. APPEAL — CRIMINAL LAW — SUPPRESSION OF EVIDENCE.

The Court of Appeals will not overturn a ruling of a trial court
on a defendant's motion to suppress evidence unless it is found
to be clearly erroneous.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 704.

[2] 68 Am Jur 2d, Searches and Seizures §§ 35, 37-59.

[3, 5-7] 68 Am Jur 2d, Searches and Seizures §§ 35, 37, 39.

Lawfulness of search of motor vehicle following arrest for traffic
violation. 10 ALR3d 314.

[4] 68 Am Jur 2d, Searches and Seizures §§ 41-45.

2. SEARCHES AND SEIZURES — SEARCHES WITHOUT WARRANTS.

A search conducted without a warrant is unreasonable per se, and the prosecution has the burden of showing that the search falls within a recognized exception to the warrant requirement.

3. SEARCHES AND SEIZURES — SEARCHES WITHOUT WARRANTS.

Searches may be conducted without a warrant where the area searched is within the immediate control of a person and the search is conducted contemporaneous with and incident to the valid arrest of that person in order to protect the arresting officers, to prevent the destruction of evidence, or where the search involves an automobile stopped on a highway or street and exigent circumstances justify a determination by police that they have probable cause to believe that it contains contraband or evidence of a crime.

4. SEARCHES AND SEIZURES — SEARCHES WITHOUT WARRANTS — PROBABLE CAUSE.

Probable cause, no matter how strong, alone does not justify an intrusion onto private property without a warrant.

5. SEARCHES AND SEIZURES — SEARCHES WITHOUT WARRANTS — PROBABLE CAUSE — EXIGENT CIRCUMSTANCES.

There is no need for police to obtain a search warrant prior to conducting a search where they have probable cause to believe that a search of a certain place will produce specific evidence of a particular crime and they also have probable cause to believe that an immediate search without a warrant is necessary in order to protect the officers or others, to prevent the loss or destruction of evidence, or to prevent the escape of an accused.

6. SEARCHES AND SEIZURES — AUTOMOBILES — INVESTIGATIVE STOPS.

Reasonableness is the test to be applied in determining the validity of a stop and search of moving motor vehicles to be determined from the facts and circumstances of each case; fewer foundation facts are necessary to support a finding of reasonableness where moving motor vehicles are involved than where the search is of a house or a home, and a stop of a motor vehicle for investigatory purposes may be based on fewer facts than would be necessary where both a stop and a search are conducted.

7. SEARCHES AND SEIZURES — AUTOMOBILES — INVESTIGATIVE STOPS.

The search without a warrant of the trunk of an automobile, following a reasonable investigatory stop by police and a search without a warrant of the interior of the vehicle which is reasonable in light of exigent circumstances, may be unreason-

able where the vehicle is, at the time of the search, entirely under the control of police, the vehicle could be moved to a secure location, and a search warrant could be secured in less than twenty-four hours from the time of the stop.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *John L. Livesay,* Prosecuting Attorney, for the people.

*Jack L. Lintner,* for defendant Gaskill.

*Biringer, Jacox & Hutchinson, P.C.,* for defendant Weaver.

Before: MacKenzie, P.J., and V. J. Brennan and M. F. Cavanagh, JJ.

Per Curiam. Defendants Gaskill and Weaver, along with a third individual, were arrested and charged with possession of marijuana with intent to deliver contrary to MCL 333.7401(1), and (2)(c); MSA 14.15(7401)(1), and (2)(c). Defendants Gaskill's and Weaver's applications for leave to appeal were granted by this Court after the trial court denied their motions to suppress evidence obtained without a warrant.

The pertinent facts are as follows. A patrolman and a reserve officer on patrol in a police vehicle in the City of Bronson noticed a car that crossed the center line of the road on two occasions. Weaver was the driver of the car and defendant Gaskill was the front seat passenger in the subject car. The car did not stop immediately after the police vehicle's flashing light and spotlights were turned on. The officers testified that the car was pulled over because of the possibility that the driver was operating the vehicle while under the influence of alcohol.

After the vehicle came to a stop, the driver,

Weaver, was asked to produce and did produce his driver's license and vehicle registration. Officer Archambeau then requested that the driver exit from the car and undergo a sobriety test at the rear of the car. The driver performed the test in a manner which led the officer to believe that he was not under the influence of alcohol. During the time that the driver was complying with the officer's request to produce the identification and to exit from the vehicle, the officer was shining his flashlight into the passenger compartment of the vehicle. The officer testified that this was when he saw a small brown box on the floor of the vehicle by the front seat passenger's leg and that, even though he could not tell exactly what was in the box, he believed that he saw a small amount of marijuana and some rolling papers in the open box.

The driver got back into the automobile, and the two policemen met at the back of the subject vehicle. The two officers had a discussion, and Officer Archambeau asked Officer Sloane if he noticed anything. Sloane, the reserve officer, said that he thought he saw defendant Gaskill put something into his boot and that he would like to see what it was. Archambeau went to the passenger's side of the vehicle and requested identification from defendant Gaskill and the passenger in the rear seat. At this time Archambeau testified that he observed the box that contained marijuana on the floor of the vehicle. He had the front and backseat passengers exit from the vehicle and took the box containing a small amount of marijuana from the floor of the vehicle. He then asked Weaver if there was anything else. Whereupon, Weaver gave Archambeau a plastic container which enclosed an even smaller amount of mari-

juana than was in the box. All of the occupants of the vehicle were searched. A roundish ball wrapped in plastic was found in Weaver's sock. The officer believed that this substance was hashish. A roll of bills, later found to total over $6,000, was retrieved from the boot of defendant Gaskill.

The three subjects were placed in the rear seat of the police vehicle, and Officer Archambeau conducted a search of the interior of the subject car, a 1976 Lincoln Continental. The officer testified that at the time of the full search of the vehicle's interior, after the three subjects had been searched and placed in the police vehicle, the engine of the Lincoln may still have been running. He testified that he searched under the seats and dashboard and in the glove compartment before turning the ignition off and placing the key on the dashboard of the stopped vehicle. After completing the search of the interior of the Lincoln, Archambeau testified that he walked to the back of that vehicle and noticed that the trunk lid was ajar. He noticed this for the first time after completing the search.

At this point, the officer's testimony given at the preliminary examination differs from that given during the trial. At the preliminary examination, Archambeau testified that the trunk lid was open from six to eight inches. During that proceeding the following colloquy took place:

"*Q. [Attorney for Defendant Weaver]:* Now what did you observe before you lifted the trunk lid?
"*A.* The trunk was open.
"*Q.* Did you see anything in the trunk?
"*A.* From the angle that I was standing, no, sir.
"*Q.* Why did you lift the trunk lid?
"*A.* Curiosity.

"*Q.* So, after you raised the trunk lid, what did you do?

"*A.* I looked in the interior of the trunk.

"*Q.* And, then, what did you do?

"*A.* That's when I found the paper sack that was open at the top, apparently had what appeared to be marijuana in two plastic bags *[sic]*.

"*Q.* What was the position of this bag?

"*A.* Almost center of the trunk and maybe several inches back."

Proceeding with the search of the trunk, the officer found two garbage-type bags, opened them, and found marijuana. He also searched luggage and a camera bag that were in the trunk and found nothing.

Officer Archambeau testified that he conducted three reenactments after the evening of the stop to determine how the trunk lid opened, including an examination on the day that the vehicle was formally searched pursuant to a warrant, July 2, 1979, one day after the stop.

Defendant Gaskill raises three issues on appeal. The first of these is whether the trial court erred in denying the defendant's motion to suppress the small plastic saltshaker containing the marijuana that was handed to the officer after he asked Weaver if there was anything else. Defendants contend that admission of the container constituted error because the evidence was obtained through a violation of defendant Weaver's right to remain silent pursuant to *Miranda*.[1] After the box containing the small amount of marijuana was found, Weaver was asked if he had anything more. Weaver responded, "yes", and handed the police officer the saltshaker. At the time of the question

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

and the handing over of the container, all three subjects assert that they had not been placed under arrest. The officer asserts that the subjects were placed under arrest after the box was discovered when they were asked to exit from the vehicle. Regardless of when the subjects were formally arrested, it is uncontroverted that at the time the officer asked Weaver if he had anything else none of the defendants had been apprised of their *Miranda* rights.

We will presume that the search of the defendants' persons was or would have been made incident to the arrest for possession of the marijuana in the box that was found on the floor of the vehicle. Because we are not convinced that the defendants had been apprised of the fact that any statement made by them could be used against them, the handing over of the shaker container was a demonstrative statement made without benefit of *Miranda* warnings and without the defendants' knowing waiver of their known right to remain silent. The shaker container given to the officer by Weaver in response to the officer's question whether there was anything else must be suppressed and not allowed to be used as evidence of any crime.

Defendants next claim that the trial court erred in allowing the marijuana seized by the officers from the trunk of the stopped vehicle to be presented as evidence of the defendants' guilt on the charge of possession.

After all three subjects had exited from the vehicle and the search which produced the box, the hashish, and the money had been conducted, after the money was counted, and after the subjects were put into the patrol car, Officer Archambeau proceeded to search the Lincoln's front and

back seat area, on and under the dashboard, and in the glove compartment. At the preliminary examination, Officer Archambeau testified that he was searching for alcohol even though he had earlier determined from his sobriety test, conducted at the rear of the Lincoln, that the driver was not drunk. Nothing incriminating was found during this search of the vehicle's interior. The officer did not recall whether the auto was running during this search. While he was engaged in searching the vehicle, the officer testified that he heard a noise at the rear of the Lincoln. Later, after he had finished his search, he walked to the back of the Lincoln at which time he noticed that the trunk was open. At the preliminary examination, the officer testified that the trunk was open from six to eight inches. During trial he testified that the trunk was open from two to three inches. But, he was not able to testify with certainty about the opening and was not able to explain the inconsistency in his testimony. At all times, the officer testified that he reached under the lid of the trunk and lifted it up.

It was the officer's contention that during his search of the glove compartment he accidentally must have pushed (or a can opener which may or may not have been wedged in the glove compartment may have pushed) the electronic trunk release button located in the glove compartment. The button was estimated to be from 1/2 to 3/4 inches in diameter and was marked "Trunk". The officer testified that he had been aware of such devices before the night of the stop of the Lincoln. Both of the police vehicles in use in this jurisdiction were similarly equipped. It is necessary that the Lincoln engine have been running or at least that its ignition have been turned on for the trunk

release to operate. The officer testified that it was not unusual for him to have subjects exit from a vehicle before turning the vehicle off. For the engine to have been running before the glove compartment door was slammed by the officer who then heard the noise of the trunk's opening at the rear of the vehicle, the vehicle would have been stopped at the side of the road at 2 a.m. for an estimated 45 to 50 minutes, still running.

This Court must determine whether the findings of the trial court on the defendant's motion to suppress were clearly erroneous. *People v Dunlap,* 82 Mich App 171; 266 NW2d 637 (1978).

A search conducted without a warrant is unreasonable per se, the burden being upon the government to show that the search falls within a recognized exception to the warrant requirement. *Coolidge v New Hampshire,* 403 US 443; 91 S Ct 2022; 29 L Ed 2d 564 (1971).

One exception to the requirement for a search warrant lies when the search of a party without a warrant in an area within his immediate control is conducted as incident to, and contemporaneous with, a valid arrest. *Chimel v California,* 395 US 752; 89 S Ct 2034; 23 L Ed 2d 685 (1969). The protection of the arresting officers and the prevention of the destruction of evidence are the bases for this exception.

Another exception to the warrant requirement is recognized where the police stop an automobile on the highway or street and the police have probable cause to believe that it contains contraband or evidence of a crime. *Carroll v United States,* 267 US 132; 45 S Ct 280; 69 L Ed 543 (1925).

"In *Chambers v Maroney,* 399 US 42, 51; 90 S Ct

1975; 26 L Ed 2d 419 (1970), the Supreme Court explained when the warrantless search of an automobile under *Carroll* is constitutional:

" 'Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search. *Carroll, supra,* holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence, an immediate search is constitutionally permissible.' " *Dep't of Natural Resources v Hermes,* 101 Mich App 517; 301 NW2d 307 (1980).

This Court has recently held in *People v Dugan,* 102 Mich App 497, 505; 302 NW2d 209 (1980), the longstanding principle concerning searches without warrants: "Probable cause, no matter how strong, does not alone justify a warrantless intrusion onto private property." That case involved an officer entering a garage and finding a snowblower which had been reported to have been stolen before any "exigent circumstances" indicated that he should enter the defendant's garage without a warrant to conduct the search. That case also discusses what is entailed in "exigent circumstances":

"The 'exigent circumstances' exception provides that when the police have probable cause to believe that a search of a certain place will produce specific evidence of that crime (the foundation requirements for issuance of a search warrant), there is no need for a warrant if the police also have probable cause to believe that an immediate warrantless search is necessary in order to (1) protect the officers or others, (2) prevent the loss or destruction of evidence, or (3) prevent the escape of the accused. *People v Harris,* 95 Mich App 507, 510; 291 NW2d 97 (1980). See *United States v Chadwick,* 433 US 1; 97 S Ct 2476; 53 L Ed 2d 538 (1977), *People v Plantefaber,* 91 Mich App 764, 770; 283 NW2d 846

(1979). The rationale of the exception is clear; when the police have the probable cause necessary to secure a warrant, but circumstances make it impossible for them to obtain the warrant in time, then it is 'reasonable' under the Fourth Amendment to conduct a search and to seize evidence or contraband. See *United States v Guidry,* 534 F2d 1220, 1222-1223 (CA 6, 1976)." 102 Mich App 503.

This Court in *People v Robert L Thompson,* 81 Mich App 54; 264 NW2d 118 (1978), held that a search of vehicle was valid where the police officer stopped the vehicle and detected the odor of burning marijuana and validly placed the defendant under arrest at that time after the traffic stop. The *Thompson* Court quoted *People v Whalen,* 390 Mich 672; 213 NW2d 116 (1973), when it said:

"We note that the search in this case was of a motor vehicle. The standard used to determine the validity of such a search was enounced in *People v Whalen, supra.*

" '1. Reasonableness is the test that is to be applied for both the stop of, and the search of moving motor vehicles.

" '2. Said reasonableness will be determined from the facts and circumstances of each case.

" '3. Fewer foundation facts are necessary to support a finding of reasonableness when moving vehicles are involved, than if a house or a home were involved.

" '4. A stop of a motor vehicle for investigatory purposes may be based upon fewer facts than those necessary to support a finding of reasonableness where both a stop and a search is *[sic]* conducted by the police.' 390 Mich at 682.

"Applying the *Whalen* standard in this case, we find that the officer possessed sufficient evidence and information on which to make a warrantless search of defendant's automobile." 81 Mich App 57.

We distinguish the present case from *Thompson.* Although both stops were predicated on observed

traffic violations and both investigations resulted in the discovery of a controlled substance, marijuana, we must distinguish the search of the interior of the subject's car from that of the trunk.

While adhering to the *Whalen* criteria for the standard of the validity of a search of a motor vehicle, we find that although the stop of the vehicle in the instant case may have been reasonable, and the search of the interior of the vehicle may have been reasonable under the circumstances, the opening of the trunk by the officer and the search of the trunk and the articles within the trunk cannot be deemed reasonable under the circumstances. The vehicle was entirely under the control of the authorities after the three subjects exited from the vehicle and were placed in the police cruiser. A wrecker service was summoned to tow the vehicle to the appropriate impoundment lot, and the police could have, and indeed did, secure a search warrant which was executed in less than 24 hours from the time of the stop. A valid search was then performed and nothing more of consequence was found.

We find that the lifting of the lid of the trunk and the search of the interior of the trunk without a warrant and without the exigencies which would validate such a search to be the type of police conduct which shall not be condoned by the courts. Therefore, we reverse the trial court's denial of the motion to suppress the evidence seized pursuant to the search of the trunk. Because we have held that the initial search of the trunk without a warrant was improper, it is not necessary to reach the question of the propriety of the officer's search of the bags and containers which were in the trunk.

Reversed and remanded.