THE PEOPLE OF THE STATE OF NEW YORK, Appellant *v.* ERNEST E., JR. and CARL R., Respondents.

Second Department, March 20, 1972.

*Eugene Gold, District Attorney (Gary I. Zwickel* and *Richard C. Laskey* of counsel), for appellant.

*Howard D. Stave* for Ernest E., Jr., respondent.

*Saul L. Singer* for Carl R., respondent.

SHAPIRO, J. The narcotic drugs which have been suppressed by the trial court as evidence were seized in a building located at 180 Bergen Street, in Brooklyn. It is a four-story brownstone containing two duplex apartments which are not interconnecting. Access to the upper apartment is through the "main entrance" at the top of the stoop. That entrance opens into a vestibule. The lower floor of the upper duplex apartment is located at the top of a staircase leading from that vestibule.

On February 25, 1970, William Nickels, who managed and serviced the building for the landlord, went to the upper apartment to collect rent. He observed the tenants and two other persons "smoking pot". He also saw a scale and "other drugs". The tenants told him they had spent the rent money to buy the drugs which they planned to sell and that they would pay the rent with money received from the resale of the drugs.

Nickels thereupon left the apartment and immediately telephoned the police. As a result, two patrolmen responded to a "radio run" which advised them of a possible sale of narcotics at the premises. They met Nickels on the street. He introduced himself as the person who had made the complaint to the Police Department and told them what he had seen and what he had been told. By the use of a key, he admitted them to the building through the entrance above the stoop. The officers entered the vestibule and climbed the flight of stairs. As they looked into the apartment, the door of which was open, they observed the defendants and a third person seated on a couch in front of a table. They testified that from their position in the hall they saw a scale containing marijuana and marijuana in packages, all of which were on the table.

The officers thereupon entered the apartment and arrested the three occupants. After confiscating the items on the table one of the officers looked "behind a curtain dividing the room" and observed a "small safe". He opened the safe and confiscated its contents — seven tinfoil cubes of hashish.

The Criminal Term concluded that the portion of the premises which the defendants occupied was in effect a one-family dwelling. That finding of fact is hereby reversed. Nickels' testimony that he was in charge of maintenance for the building and his possession of a key indicated that the main entrance, vestibule

and staircase were reserved to the landlord and were not part of the premises rented to the tenants. Hence Nickels, as the landlord's agent, had the right to admit the police officers to the vestibule and they, in turn, had the right to climb the stairs. Once they reached the top of the staircase the evidence on the table was in plain view through the open door to the apartment and was subject to seizure, the officers being lawfully at the place from which they obtained their view (cf. *Coolidge* v. *New Hampshire,* 403 U. S. 443). Hence, insofar as the motions to suppress related to the evidence seized from the table, they should have been denied.

I would reach the same result even if the vestibule and staircase were regarded as part of the leased premises, for when Nickels was in the apartment he observed the commission of a felony — unlawful possession of a dangerous drug for the purpose of sale (Penal Law, § 220.10). That observation gave him the right to make a citizen's arrest of the occupants of the apartment without a warrant (Code Crim. Pro., § 183). Although he did not personally exercise that right, its existence, based upon personal knowledge, when communicated to the police immediately after he had witnessed the commission of a felony, provided sufficient probable cause to warrant their reasonable belief that the felony which he had observed was still in progress (cf. *Brinegar* v. *United States,* 338 U. S. 160, 175-176; *Ker* v. *California,* 374 U. S. 23; *United States* v. *Harris,* 403 U. S. 573). That fact alone justified their entry for the purpose of effecting an arrest (*Ker* v. *California, supra*; *Draper* v. *United States,* 358 U. S. 307) and they were not required to announce their office or purpose in view of the exigent circumstance that the ongoing felony involved the presence of easily destructible evidence.* As the court said in *People* v. *Richardson* (36 A D 2d 603, 604, affd. 29 N Y 2d 802): " But, the law is clear that exigent circumstances may excuse compliance with section 178 of the Code of Criminal Procedure. (See *People* v. *McIlwain,* 28 A D 2d 711; see, also, *People* v. *De Lago,* 16 N Y 2d 289.) Considering the facts herein, and the possibility of destruction of the contraband, entry into the room unannounced was justified."

In that case the court found " that probable cause was established " (p. 603), even though the informant, the manager of the rooming house in question, who had summoned the police,

---

* Such an announcement would have been useless in any event since presumably it could not have been heard in the apartment, which is located on a different floor.

had told them that the source of his information that narcotics were being sold in the room occupied by the defendant was merely "his own observations of addicts going in and out of the room, and complaints which had been received from other tenants" (p. 603). He had no personal knowledge that drugs were in fact being sold in the room by the defendant and the only thing to buttress his statement to the police was their observation "later in the evening" (p. 603) when they observed four individuals separately enter and leave the defendant's room during a 15-minute period, two of whom were recognized by them as narcotic addicts and one of whom was observed upon entry into the room to be holding two bills in his hands. On that state of facts the court said that "we find that under all of the circumstances the officers had probable cause to believe that a felony had been committed, thereby justifying entry into the room to make an arrest" (p. 603). Here the facts are much stronger than in the *Richardson* case, for here the information given to the police was not based upon secondhand information conveyed to the manager of a rooming house by tenants, supported merely by inferences drawn by the police from their observation of two addicts entering and leaving the premises, but upon Nickels' personal observation of the drugs and the direct statements of the defendants to him that they had bought them for resale.

That being the case, the only question remaining is whether the police had a right to rely upon Nickels and the information which he conveyed to them. That the police had the right to accept and act upon the reliability of Nickels and his information is clearly established, whether the pertinent test be one of reasonableness under all of the attendant circumstances (*United States* v. *Harris,* 403 U. S. 573, *supra*) or the two-pronged test which requires a demonstration both of the reliability of the informant and of his information (*Aguilar* v. *Texas,* 378 U. S. 108; *Spinelli* v. *United States,* 393 U. S. 410). The two-pronged test is clearly met on this record, for the reliability of Nickels is established by his quite evident responsibility for the maintenance of the building, his calling of the police and waiting for them to arrive, and by his admission of them to the premises through the use of a key. His reliability as an informant being thus established, the reliability of his information is also established by his viewing of the drugs and the defendants' statements to him with regard thereto.

However, the search for and seizure of, the seven tinfoil cubes of hashish from the closed safe were unlawful. They

398

cannot be upheld under either the '' plain view '' doctrine or as an incident of a lawful arrest. The hashish was not in the plain view of the officers at any time (see *Coolidge* v. *New Hampshire,* 403 U. S. 443, *supra*) ; nor was it in the '' grabbable '' area from which the defendants might have obtained weapons or other contraband, as the safe was not within their reach (cf. *Chimel* v. *California,* 395 U. S. 752).

Hence, the order appealed from should be modified, on the law and the facts, by limiting the granting of the defendants' motions to those articles of evidence seized from the safe, and denying the motions as to the balance of the seized evidence; and the order, as so modified, should be affirmed.

Hopkins, Acting P. J., Latham, Christ and Brennan, JJ., concur.

Order modified, on the law and the facts, by limiting the granting of the motions to the articles of evidence seized from the safe located in the premises in question and denying the motions as to the balance of the seized evidence. As so modified, order affirmed.