PEOPLE v CHAPMAN

1. SEARCHES AND SEIZURES—SEARCH WITHOUT WARRANT—FIREMEN—
   POLICE—PLAIN VIEW.

   The right to be protected against unreasonable searches and
   seizures is not violated when a conservation officer enters a
   defendant's garage without a warrant for the purpose of remov-
   ing illegally possessed deer, (1) where no search was conducted,
   (2) where the conservation officer was called to the premises by
   the fire chief who discovered the deer while performing his
   firefighting functions, (3) where the deer were originally seized
   by a part-time police officer after they inadvertently came into
   his plain view while he was performing in his capacity as a
   volunteer fireman and who therefore lawfully had a right to be
   on the premises, and (4) where there is no suggestion that the
   officer's purpose in being on the scene was to further any
   criminal investigation or that he had any reason to suspect
   that illegal venison was in the defendant's house.

2. CONSTITUTIONAL LAW—SEARCHES AND SEIZURES—PLAIN VIEW—EVI-
   DENCE.

   If an individual has a reasonable expectation of privacy in the
   area searched, or the materials seized, a search by Fourth
   Amendment standards has been conducted; however, what a
   person knowingly exposes to the public, even in his home or
   office, is not a subject of Fourth Amendment protection; thus
   the seizure of objects within the plain view of an officer who is
   lawfully in a place where he has a right to be is not proscribed

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 68 Am Jur 2d, Searches and Seizures §§ 88, 102.
   Search and seizure: Observation of objects in "plain view"—Su-
      preme Court cases. 29 L Ed 2d 1067.
[2, 3] 68 Am Jur 2d, Searches and Seizures § 88.
[4] 68 Am Jur 2d, Searches and Seizures § 23.
[5] 41 Am Jur 2d, Indictments and Informations §§ 55, 56, 60.
[6] 35 Am Jur 2d, Fish and Game § 50.
   Validity, construction, and effect of statutes or regulations making
      possession of fish or game, or of specified hunting or fishing
      equipment, prima facie evidence of violation. 81 ALR2d 1088.

by the Constitution and those objects may be introduced in evidence (US Const, Am IV).

3. Searches and Seizures—Search Without Warrant—Police—Plain View Doctrine.

    The most crucial inquiry under the plain view doctrine regarding a search without a warrant by a police officer is how the officer came to be in the position from which he was able to view the materials seized; once rightfully in such a position, he has a right, if not a duty, to seize objects which he has a reasonable basis for believing are fruits or implements of a crime, contraband, or evidence.

4. Constitutional Law—Searches and Seizures—Plain View Doctrine—Search Without Warrant—Police—Inadvertent Observations.

    The common principle running through the cases under the plain view doctrine regarding searches without warrants by a police officer is that where the initial intrusion into the property is not barred by the Fourth Amendment, inadvertent observations made in the course of such an intrusion are similarly without the purview of that amendment (US Const, Am IV).

5. Witnesses—Criminal Law—Res Gestae Witnesses—Prosecutor's Duty—Indorsement—Complaints—Information—Statutes.

    A prosecutor has a statutory duty to indorse any res gestae witnesses on the information; however, no statute or case precedent requires the indorsement of witnesses when a misdemeanor prosecution proceeds directly from a complaint rather than an information (MCLA 767.40; MSA 28.980).

6. Game—Deer—Prosecutors—Statutes.

    A prosecutor is not required to prove that the deer were killed illegally where he is prosecuting under the statute prohibiting the possession of more than one deer at any one time (MCLA 312.12; MSA 13.1341).

Appeal from Presque Isle, Martin B. Breighner, J. Submitted November 4, 1976, at Grand Rapids. (Docket No. 27683.) Decided February 3, 1977.

Chad E. Chapman was convicted in district court of the illegal possession of more than one deer. Defendant appealed to circuit court. Affirmed. Defendant appeals by leave granted. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Elmer L. Radka,* Prosecuting Attorney, for the people.

*Jerry L. Sumpter,* for defendant.

Before: BRONSON, P. J., and J. H. GILLIS and V. J. BRENNAN, JJ.

BRONSON, P. J. Defendant appeals by leave granted from circuit court affirmance of his misdemeanor conviction for illegal possession of more than one deer. MCLA 312.12; MSA 13.1341. Defendant's primary attack on the conviction is directed at the district court's denial of his motion to suppress evidence. Defendant contends that the three deer, or parts thereof, which were seized from his residence, should have been suppressed as the result of an illegal search and seizure.

The factual situation out of which this search and seizure claim arises is unusual.

The record discloses that on December 23, 1974, at approximately 11:45 p.m., the Onaway Volunteer Fire Department was notified of a fire at the home of defendant. Defendant's house was ablaze when they arrived, and the volunteer firemen spent the next 15 minutes or so in bringing the fire under control.

The blaze was apparently limited to the main part of the house. When the fire was substantially under control, the fire chief, a truck driver by profession, entered a breezeway which connected the house to a garage in order to open some windows and doors to vent the heavy accumulation of smoke. His object was to permit the firemen to see what they were doing when they entered the house to mop up.

The chief entered the garage looking for another

door to open. In the garage, he observed one deer hanging on a stringer, plus a doe head and a buck lying on some cement blocks. Suspecting that the deer were possessed illegally, he called one of the volunteer firemen, a Mr. Badder, and told him to keep everyone out of the garage.

Mr. Badder, a part-time police officer as well as a volunteer fireman, complied with this directive and stood at the door to the garage. While standing there, he observed the deer in the garage.

It appears that Badder's sole purpose in being on the premises was to help put out the fire and that he went and stood by the garage door pursuant to the order of the fire chief only in furtherance of this firefighting function. There has been no suggestion that Badder's purpose in being on the scene was to further any criminal investigation or that he had any reason to suspect that illegal venison was in defendant's house.

While Badder secured the garage and the other firemen finished mopping up the fire, the fire chief sent word to the game warden. A State of Michigan conservation officer received the report that illegal deer had been found in defendant's house, drove to Onaway, and picked up the deer.

Defendant claims that his right to be protected against unreasonable searches and seizures was violated when the conservation officer entered the garage and removed the deer without obtaining a warrant. We disagree that the absence of a search warrant rendered the deer a product of an illegal search and seizure. We find that no illegal search and seizure occurred because there was no search.

The deer were seized by a police officer, Mr. Badder, after they had inadvertently come within his plain view while he was lawfully in a place where he had a right to be.

The basic rules underlying our decision were well stated in two recent Supreme Court cases. In *People v Whalen,* 390 Mich 672, 677; 213 NW2d 116 (1973), the Supreme Court said:

"As stated by the United States Supreme Court in *Coolidge v New Hampshire,* 403 US 443; 91 S Ct 2022; 29 L Ed 2d 564 (1971) the basic constitutional rule in this area is that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment —subject only to a few specifically established and well delineated exceptions.

"However, before the above rule can be applied, and the exceptions to it come into play, it first must be established from the facts before the court, that a search did in fact take place for Fourth Amendment purposes.

"From *Katz v United States,* 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967) there has evolved a test, applied by the courts, to determine whether or not a search, by Fourth Amendment standards, has indeed taken place. Simply put, if an individual has a reasonable expectation of privacy in the area searched, or the materials seized, a search has been conducted. 'What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.' *Katz, supra,* 351.

"Thus seizure of objects within the plain view of an officer, lawfully in a place where he had a right to be, are not proscribed by the Constitution. *United States v Lee,* 274 US 559; 47 S Ct 746; 71 L Ed 1202 (1927)."

The Supreme Court had previously adopted the following rule in *People v Tisi,* 384 Mich 214, 218; 180 NW2d 801 (1970):

"In the recent case of *Harris v United States,* 390 US 234; 88 S Ct 992; 19 L Ed 2d 1067 (1968), the Court said (p 236):

" 'It has long been settled that objects falling in the

plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence.' "

Under the plain view doctrine, by which the instant seizure is justified, the most crucial inquiry is how the police officer came to be in the position from which he was able to view the materials seized. Once rightfully in such a position, he has a right, if not a duty, to seize objects which he has a reasonable basis for believing are fruits or implements of a crime, contraband, or evidence. See People v Hunter, 72 Mich App 191; 249 NW2d 351 (1976), *United States v Williams,* 385 F Supp 1400 (ED Mich, 1974). The Fourth Amendment provides no protection to such objects which are knowingly exposed. *Katz, supra,* p 351.

The more common justifications for a police officer's presence on the premises of a private individual without a search warrant involve cases concerning the execution of an arrest warrant, cases of "hot pursuit", cases of consent or invitation of the officer's presence, and permissible automobile stops.[1] The common principle running through those cases is that where the initial intrusion into the property is not barred by the Fourth Amendment, inadvertent observations made in the course of such an intrusion are similarly without the purview of that amendment.

Here the justification for Badder's presence on the premises of the defendant arose from the circumstance that defendant's home was on fire and Badder was fighting that fire in the capacity of a fireman. There is no basis in this case for any suspicion that Badder was on the premises in

---

[1] *See* discussion in *Coolidge, supra,* pp 465–466.

order to conduct a search. Our Supreme Court has upheld the validity of a seizure made under similar circumstances, *People v Chimovitz,* 237 Mich 247; 211 NW 650 (1927), and intervening developments in the law of search and seizure have not altered the premise of that case.

When Badder saw the deer in the garage, what he saw was a possible misdemeanor being committed in his presence. *People v Kuntze,* 371 Mich 419, 427; 124 NW2d 269 (1963). He had a right to seize the evidence of the crime, and he did so by standing guard at the door and permitting no one to enter the garage. There was no need for him to physically pick up the deer and carry them into the street before turning them over to the conservation officer. Since the deer were in the possession of a police officer when the conservation officer arrived on the scene, no Fourth Amendment violation occurred when they were turned over to him. We conclude that the trial court correctly denied defendant's motion to suppress.

Defendant next asserts that reversible error occurred because the prosecutor did not indorse any res gestae witnesses. However, the duty to indorse res gestae witnesses is statutory, MCLA 767.40; MSA 28.980, and we are aware of no statute or case requiring the indorsement of witnesses when a misdemeanor prosecution proceeds directly from a complaint rather than an information. Defendant does not claim that there were witnesses who should have been called by the prosecutor but were not, and defendant admits that he knew of the witnesses called by the prosecutor. Under the circumstances, we find no error.

Defendant finally asserts that the statute under which he was convicted required that the prosecutor prove that the deer were killed illegally. De-

fendant is wrong. The statute reads in pertinent part as follows:

"It shall be unlawful for any person to * * * have in possession at any 1 time * * * more game animals * * * than hereinafter enumerated * * * ."

The statute goes on to prohibit possession of more than one deer at any one time. Defendant was shown to have been in possession of three deer, two more than permitted, and the conviction must be sustained.

Affirmed.