PEOPLE v HOPKO

1. SEARCHES AND SEIZURES—PRIVACY—PUBLIC EXPOSURE—FOURTH
   AMENDMENT—CONSTITUTIONAL LAW.

   A test applied by the courts to determine whether or not a search
   by Fourth Amendment standards has taken place is that if an
   individual has a reasonable expectation of privacy in the area
   searched, a search has been conducted; but what a person
   knowingly exposes to the public, even in his own home or office,
   is not subject to Fourth Amendment protection (US Const, Am
   IV).

2. SEARCHES AND SEIZURES—PRIVACY—QUALIFIED EXPECTATIONS—CO-
   TENANTS—TOTAL EXPECTATIONS.

   A cotenant has a qualified but not total expectation of privacy as
   to marijuana plants growing in his garden located in the back
   of a backyard area shared in common with another cotenant;
   his expectation of privacy is total as to the public and therefore
   he is protected from entry by uninvited third parties and he
   can reasonably expect that his cotenant, sans invitation, would
   not enter on his garden or invite others to do so; but it is not
   reasonable to expect his cotenant to shut his eyes to what he
   could see from his own separate garden, nor could he reason-
   ably expect privacy from what his cotenant's invitees could
   observe from a cotenant's garden or the part of the lawn area
   shared in common.

3. SEARCHES AND SEIZURES—FOURTH AMENDMENT—PRIVACY—POLICE
   OFFICERS—COTENANTS—MARIJUANA—COMMON LAWN AREA—
   CONSTITUTIONAL LAW.

   A defendant's reasonable expectation of privacy was not violated
   and therefore no search within the meaning of the Fourth
   Amendment occurred where a police officer lawfully on the
   premises at the defendant's cotenant's request observed mari-
   juana growing in the defendant's garden from the vantage

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 68 Am Jur 2d, Searches and Seizures § 8 *et seq.*
[3, 5, 6] 68 Am Jur 2d, Searches and Seizures §§ 23, 88.
   Search and Seizure: observation of objects in "Plain View" —
   Supreme Court Cases. 29 L Ed 2d 23.

point of a shared-in-common lawn area used by both of the cotenants (US Const, Am IV).

4. Searches and Seizures—Curtilage—Cotenants—Felonies in Progress—Observations.

Cases holding that a defendant has a reasonable expectation of total and exclusive privacy where the area searched is within the curtilage of the home are distinguishable from a case where a police officer is invited on the premises by a cotenant of the defendant who has every right to be there and while upon the premises and without first intruding onto the defendant's property he observes a felony in progress on the defendant's property.

5. Searches and Seizures—Plain View—Probable Cause—Contraband—Warrants—Exigent Circumstances—Marijuana Plants.

Plain view alone is never enough under the plain view doctrine to justify the seizure of evidence without a warrant; no amount of probable cause, even where the object is contraband, can justify a search or seizure without a warrant absent exigent circumstances; the discovery of growing marijuana plants presents such exigent circumstances for their seizure where the owner of the plants is present and could quickly remove them from the ground.

6. Searches and Seizures—Warrants—Marijuana—Police—Fourth Amendment—Cotenants—Exigent Circumstances—Constitutional Law.

The seizure of growing marijuana plants without a warrant was proper in a case where they were discovered by a police officer without a Fourth Amendment search while he was properly on the premises at the defendant's cotenant's request and where the marijuana could have been easily removed from the ground thus creating some exigent circumstances for the seizure (US Const, Am IV).

Appeal from Ingham, Jack W. Warren, J. Submitted October 12, 1977, at Lansing. (Docket No. 30589.) Decided November 21, 1977. Leave to appeal applied for.

Thomas J. Hopko was convicted of manufacturing marijuana. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.*

*Derengoski,* Solicitor General, *Peter D. Houk,* Prosecuting Attorney, *Lee W. Atkinson,* Chief Appellate Attorney, and *Howard J. Soifer,* Assistant Prosecuting Attorney, for the people.

*Sisk & Robson, P. C.,* for defendant.

Before: DANHOF, C. J., and ALLEN and H. L. HEADING,* JJ.

ALLEN, J. This appeal raises the basic issue of whether the constitutional protection[1] against unreasonable searches and seizures requires suppression of evidence clearly visible in a backyard garden area where an investigative officer, without first obtaining a warrant, seizes 54 plants of growing marijuana. Defendant was charged with manufacturing marijuana in violation of MCLA 335.341(1)(c); MSA 18.1070(41)(1)(c). Following denial of his motion to suppress, based upon the Fourth Amendment prohibition against unreasonable searches and seizures, defendant was tried by a jury and found guilty. On July 2, 1976, he was sentenced to one year probation and 15 days imprisonment in the county jail and he appeals as a matter of right.

## FACTS

Defendant and his family were renters of the lower floor of a two-story house in Holt, Michigan. The upper floor was rented to John Jewett and his family. Adjoining the house, which faced west on Aurelius Road, was a backyard area containing two gardens some 20 to 50 feet apart. The two

---

* Detroit Recorder's Court judge, sitting on the Court of Appeals by assignment.

[1] US Const, Am IV, Const 1963, art 1, § 11.

gardens had been plowed by the landlord who informed the tenants to choose the one each wanted. The Jewett family chose the garden in the north side of the yard and defendant's family used the south garden. Between the back entrance of the house and the garden was an open lawn area over which one must walk in order to reach the gardens. This area was shared in common by the two tenants. The backyard was enclosed on the north, south and east sides by a fence. In back of the gardens at the rear (east end) of the yard was a large weed patch. On the afternoon of July 23, 1975, following an argument with defendant, Jewett flagged down a cruising patrol car driven by Corporal Robert Siegrist of the Ingham County Sheriff's Department. After informing the officer that he believed marijuana was growing in his neighbor's garden, Jewett led the officer into the backyard area for the purpose of investigation. When Siegrist was approximately 15 feet from the Hopko garden he saw what appeared to be a marijuana plant growing at the end of a row of corn and sunflowers. Closer examination disclosed other marijuana plants spaced some 10 to 12 inches apart between the corn and sunflowers. Wishing to confirm his determination, Officer Siegrist telephoned the Tri-County Metro Narcotics Squad for assistance. Within a few minutes Detective Wesley Shaw of the narcotics squad arrived and, upon examining the garden area, found what he concluded to be marijuana growing among the corn and sunflowers in the Hopko garden. Whereupon Officer Siegrist, his suspicions confirmed, cut 54 plants ranging in height from 8 inches to 4-1/2 feet from defendant's garden. Officer Siegrist continued his on-the-scene investigation by contacting defendant who had remained inside his downstairs apartment during the search and seizure. When

asked by Siegrist which garden was his, defendant pointed to the garden from which the marijuana plants were taken. The plants were sent to the State Police Crime Laboratory and were found to be marijuana. Later, a warrant was issued for defendant's arrest.

## ISSUES

The principal question raised in this appeal is whether a backyard area which is divided into two separate gardens shared by joint tenants as aforesaid is covered by the constitutional search and seizure guarantees. The question is one of first impression in this jurisdiction. Should the answer to this question be "yes", the people argue that the seizure is still permissible under the "plain view" doctrine—a recognized exception to the rule that a warrant is required. In rebuttal defendant argues that the plain view doctrine is inapplicable since, under this doctrine, the discovery of the evidence must be inadvertent. *People v Heard,* 65 Mich App 494; 237 NW2d 525 (1975),[2] *Coolidge v New Hampshire,* 403 US 443, 469; 91 S Ct 2022, 2040; 29 L Ed 2d 564, 585 (1971). Defendant contends that the inadvertence is missing since the officer knew what he was looking for when he entered the backyard area.

[2] "Plaintiff argues that the plain view exception to the warrant requirement applies here; that is, that the typewriter fell within the plain view of officers who had a right to be in the position to have that view. *People v Whalen,* 390 Mich 672; 213 NW2d 116 (1973). There are, however, important limitations on the plain view doctrine. *Coolidge v New Hampshire,* 403 US 443; 91 S Ct 2022; 29 L Ed 2d 564 (1971). The officer, of course, must be lawfully in the position from which evidence comes within his plain view. There are also further limitations. One, plain view alone is never enough to justify the warrantless seizure of evidence—there must be 'exigent circumstances'. Two, the discovery of evidence in plain view must be inadvertent. *Coolidge v New Hampshire, supra, People v Harden,* 54 Mich App 353; 220 NW2d 785 (1974)." *Heard* at 498.

In its opinion the trial court noted that if a warrantless search occurred which was not justified under the plain view rule, it still could be validated as a consent search since consent to search defendant's garden was given by a cotenant. Defendant argues that as to this issue the trial court erred since in cases of "third party consent" it must appear that the person consenting has common authority, *viz:* mutual use of the property searched. *United States v Matlock,* 415 US 164, 178; 94 S Ct 988, 997; 39 L Ed 2d 242, 253–254 (1974), *People v Flowers,* 23 Mich App 523; 179 NW2d 56 (1970). In the present case the record is clear that Jewett had no authority to enter upon or to use defendant's garden.

## THE SEARCH

The first standard for determining whether a warrant for a search and seizure is required is whether the individual affected holds a reasonable expectation of privacy in the area searched.

" 'whenever an individual may harbor a reasonable expectation of privacy," * * * he is entitled to be free from unreasonable governmental intrusion.' " *United States v Dionisio,* 410 US 1, 8; 93 S Ct 764, 769; 35 L Ed 2d 67, 76 (1973).

"[T]here has evolved a test, applied by the courts, to determine whether or not a search, by Fourth Amendment standards, has indeed taken place. Simply put, if an individual has a reasonable expectation of privacy in the area searched, or the materials seized, a search has been conducted. 'What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.' " *Katz v United States,* 389 US 347, 351; 88 S Ct 507; 19 L Ed 2d 576 (1967), cited in *People v Whalen,* 390 Mich 672, 677; 213 NW2d 116 (1973).

The instant case is unique in that the defendant did not occupy the house or garden alone. Instead, he shared the backyard area with a cotenant. Given these circumstances we conclude that defendant had a qualified but not total expectation of privacy. As to the public in general his expectation of privacy was total. As such, he was protected from any entry by uninvited third parties. We also find that defendant could reasonably expect that his cotenant, sans invitation, would not enter upon defendant's garden plot or invite others to do so. But we do not believe that defendant could reasonably expect his cotenant to shut his eyes to what could obviously be observed from the cotenant's garden plot. Nor could he reasonably expect privacy from what invitees of the cotenant[3] could observe, while standing on the cotenant's garden or that part of the lawn area which was shared in common. Though the Fourth Amendment umbrella would protect defendant from even the cotenant's or his invitees' warrantless entry upon defendant's own garden for the purpose of digging for suspected buried contraband, its shadow does not extend so wide as to shroud from view 4-foot high plants which could clearly be observed and identified by the cotenant or his invitees from the vantage point of the cotenant's garden area or the shared-in-common yard area.

Application of this principle of law to the facts in this case leads us to conclude that the defendant's reasonable expectancy of privacy was in no way violated. The officer did not enter the curtilage uninvited. He came at the request of the

[3] The record of trial discloses that about a month before the incident in question, cotenant Jewett had invited his brother-in-law to visit and during such visit the brother-in-law, a garden enthusiast, while standing on Jewett's garden, observed the plants in question and, after discussion with Jewett, concluded the plants were marijuana.

cotenant who had every right to invite him to the backyard area. Upon entering the backyard the officer, while still standing upon the lawn area through which it was necessary to walk in order to reach either garden, observed what he believed to be marijuana.[4] The lawn area from which the officer's observation was made was shared in common by the two tenants. From this vantage point the officer could clearly see at least one 4-1/2 foot marijuana plant extending above the corn and sunflowers. While the defendant had total privacy from an officer's intrusion onto defendant's own garden area and then discovering marijuana, he had no privacy from his cotenant Jewett or Jewett's invitees observing what was clearly visible either from the lawn area or from Jewett's own garden plot. Therefore, no "search" within the meaning of the Fourth Amendment occurred. *People v Whalen,* 390 Mich 672; 213 NW2d 116 (1973).

In *People v E,* 38 App Div 2d 394; 330 NYS2d 3 (1972), *aff'd,* 30 NY2d 884; 335 NYS2d 435 (1972), the manager of a building containing two separate apartments, while collecting rent from the upstairs, had observed defendants smoking marijuana and had also seen a scale and other drugs. He promptly called the police whom he admitted to the vestibule and staircase. Upon entering the building the officers climbed the stairs finding the apartment door open. Looking through the open door they observed the defendants and, on a table, a scale containing marijuana and marijuana in packages. Without a warrant the officers entered the apartment, confiscated the marijuana and arrested the occupants. The court rejected the defendants' claim of a Fourth Amendment violation.

---

[4] As has been stated earlier, the officer was some 15 feet distant from defendant's garden when he first observed what appeared to him to be marijuana.

The similarities between *People v E* and the instant case are striking. Each involved two separate apartments within a single building. In each, a third party who was entitled to be on the premises, upon first observing what he believed to be a criminal violation, invited the police on the premises. In each, the police, while lawfully upon a part of the premises and without first intruding onto defendant's property, observed a felony in progress.[5]

Because the prosecution stipulated at trial that the garden from which the plants were removed was within the curtilage[6] of the home, defendant argues that this stipulation per se confers upon him a reasonable expectation of total and exclusive privacy. At least three cases have so held. *Vidaurri v Superior Court of San Diego County,* 13 Cal App 3d 550, 553; 91 Cal Rptr 704, 706 (1970), *Wattenburg v United States,* 388 F2d 853, 857–858 (CA 9, 1968), *People v Killebrew,* 76 Mich App 215; 256 NW2d 581 (1977). These cases are clearly distinguishable. In *Vidaurri,* an agriculture inspector searching for the Wooly White Fly pest, but without a warrant to search the premises, called at defendant's single-family home. When no one answered he proceeded to open an unlocked gate and enter the backyard. His look at the citrus trees failed to reveal the insect but he did see what he believed was a marijuana plant, and

---

[5] *People v E, supra,* also relied upon the fact that marijuana in packages was easily destructible and hence exigent circumstances justified immediate seizure. We would note, however, that in the instant case the marijuana plants could have been easily pulled from the garden by the defendant during the time the police left to secure a warrant. If it be argued that one of the officers in the present case could have remained while the other sought a warrant, so too could one of the two patrolmen in *E.*

[6] Curtilage has been defined as an enclosed space of ground surrounding a dwelling house. Black's Law Dictionary (Revised 4th ed), p 460, *United States v Romano,* 388 F Supp 101, 104 (ED Pa, 1975).

plucked a leaf. The court held the evidence should be suppressed since the inspector had no authority to enter the premises to search for the pest. In the instant case, the officer was invited on the premises by a cotenant who had every right to take him into the backyard. Furthermore, as is noted in *United States v Romano,* 388 F Supp 101 (ED Pa, 1975), the advent of the multiple-dwelling units has significantly modified the protections afforded under curtilage.[7]

In *Wattenburg, supra,* defendants were the owner-occupant and tenant of a motel known as Hideaway Lodge. They had cut from government lands some 1,000 Christmas trees which they placed in a stockpile only 35 feet from the lodge and 5 feet from the parking area used by patrons and employees of the lodge. Without obtaining permission from the lodge owner or any of his employees, government agents moved in cutting "matches" from some of the stockpiled trees to match with stump cuts found on the government lands. The court held that the stockpile was within the curtilage of the Wattenburg home and "therefore, at least as to him, protected by the Fourth Amendment". Again, we distinguish this case for the reason that, although a multiple dwelling was involved, no one gave the agents authority to enter the motel yard. Had the government agents been invited upon the property by a weekend renter at

---

[7] "The concept of curtilage has been significantly modified when applied to a multiple dwelling. The Second Circuit, in *United States v Conti,* 361 F2d 153, 157 (CA 2, 1966), *vacated on other grounds,* 390 US 204; 88 S Ct 899; 19 L Ed 2d 1035 (1968), and *United States v Miguel,* 340 F2d 812, 814 (CA 2, 1965), held that the lobby and hallways of a multiple dwelling, *used in common by all the tenants,* is not within the curtilage of the individual tenant." (Emphasis supplied.) *United States v Romano, supra,* at 104. One Michigan case has reached the opposite conclusion. *People v Killebrew,* 76 Mich App 215; 256 NW2d 581 (1977). But *Killebrew* is similarly distinguishable because the police were not voluntarily invited onto the premises.

the motel whose suspicion had been aroused by seeing what was clearly visible, a factual situation similar to the instant case would have been presented.[8]

## THE SEIZURE

To this point, we have established that the plants were discovered without a violation of defendant's Fourth Amendment rights because no "search" occurred. But does it necessarily follow that where no search occurs, a seizure is automatically justified? The landmark case, *Coolidge v New Hampshire,* 403 US 443; 91 S Ct 2022; 29 L Ed 2d 564 (1971), suggests that something more than "no search involved" is required.

"The limits on the [plain view] doctrine are implicit in the statement of its rationale. The first of these is that plain view *alone* is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle discussed above, that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances'. Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure." (Emphasis in original.) 403 US at 468.

---

[8] In two recent decisions by this Court, discovery of contraband on private property was sustained on grounds that since the officers had a right to be where they were and could see contraband in plain view no "search" in Fourth Amendment terms occurred. *People v Washington,* 77 Mich App 598; 259 NW2d 151 (1977)—discovery of heroin in an apartment by officers responding to a call to render emergency medical aid to the defendant, *People v Hunt,* 77 Mich App 590; 259 NW2d 147 (1977)—discovery of heroin in a filling station restroom by officers responding to a call from station attendant.

The officer in the present case occupied the same position he would have found himself in if he had made a "plain view" discovery, *i.e.,* he had discovered contraband without conducting a Fourth Amendment "search". Other cases have modified the restrictions of *Coolidge.*[9] But, after excluding vehicle and open field warrantless seizures situations, has the law moved so far as to validate a seizure whenever, as here, contraband is discovered without violating a reasonable expectation of privacy? In *People v Hunt, supra,*[10] the defendant was arrested at the time of the seizure and the seizure was validated as a seizure incident to arrest. However, the recent case of *People v Chapman,* 73 Mich App 547; 252 NW2d 511 (1977), suggests[11] that, in some circumstances, officers may seize contraband located on private property provided the officers were properly on the private property and the contraband was in obvious sight. In that case, firemen had responded to a fire at defendant's home. In the course of fighting the fire, the fire chief entered the garage where he saw

[9] A warrantless seizure of contraband in an automobile in plain view of an officer who was lawfully in place when he first observed the contraband has been upheld partly on the theory that the automobile could be driven away and partly on the rationale an automobile search is less intrusive than a search of one's person or of a building. *Carroll v United States,* 267 US 132; 45 S Ct 280; 69 L Ed 543 (1925), *Chambers v Maroney,* 399 US 42, 49; 90 S Ct 1975, 1980; 26 L Ed 2d 419, 427 (1970), *Cardwell v Lewis,* 417 US 583; 94 S Ct 2464; 41 L Ed 2d 325 (1974), *People v Whalen,* 390 Mich 672, 677; 213 NW2d 116 (1973), *People v Hunter,* 72 Mich App 191; 249 NW2d 351 (1976). Likewise, contraband found in an "open field" as contrasted with the curtilage may be seized without warrant when found in clear view. *United States v Pruitt,* 464 F2d 494, 496 (CA 9, 1972), *Hester v United States,* 265 US 57; 44 S Ct 445; 68 L Ed 898 (1924).

[10] *See,* footnote 8.

[11] *Chapman* relies upon *Harris v United States,* 390 US 234; 88 S Ct 992; 19 L Ed 2d 1067 (1968), which stated without qualification that officers could seize anything they lawfully saw. *Chapman* did not recognize the statement in *Coolidge v New Hampshire, supra,* that a warrant is required to effect a seizure on private property even if the object is in plain view.

a deer hanging from a stringer and a doe and buck head lying on cement blocks. Suspecting illegal possession, the chief had one Badder, a fireman and part-time policeman, stand guard while the chief called a conservation officer. When the conservation officer arrived Badder gave him the doe. Defendant's motion to suppress the evidence on the ground of a prohibited Fourth Amendment seizure was rejected, our Court saying:

"When Badder saw the deer in the garage, what he saw was a possible misdemeanor being committed in his presence. *People v Kuntze,* 371 Mich 419, 427; 124 NW2d 269 (1963). He had a right to seize the evidence of the crime, and he did so by standing guard at the door and permitting no one to enter the garage. There was no need for him to physically pick up the deer and carry them into the street before turning them over to the conservation officer. Since the deer were in the possession of a police officer when the conservation officer arrived on the scene, no Fourth Amendment violation occurred when they were turned over to him. We conclude that the trial court correctly denied defendant's motion to suppress." *Chapman, supra,* at 553.

We do not go so far as to hold that in every situation where contraband is discovered without a search, a warrantless seizure is permissible. However, we fail to find a meaningful distinction between the instant case and the situation described in *Chapman.* If the fireman could seize the doe because he saw a possible misdemeanor being committed in his presence, so too could the officer in the present case make a warrantless seizure upon seeing a possible felony being committed in his presence.[12]

---

[12] For present purposes, we rely upon this part of *Chapman,* not its broader assertion that officers may seize anything they lawfully see. *See, fn 11, supra.*

We do not base our conclusion upon *Chapman* alone. One other factor influences our decision. Though marijuana plants, unlike automobiles, do not run away, they are nevertheless quickly removed by pulling them from the ground. Thus, to a certain extent, exigent circumstances existed. Since defendant was present in his downstairs apartment all during the time the two officers were conducting the investigation, the danger existed that had the officers left to obtain a warrant, the defendant could remove the evidence. Although one officer could have remained on guard while the other went for a warrant, such a requirement would be unreasonable on these facts. A similar argument could have been made in *Chapman, supra,* and *People v E, supra.*

We hold that the marijuana was discovered without a Fourth Amendment search and that the subsequent warrantless seizure was proper in this case.

Affirmed.