PEOPLE v CLARK

Docket No. 64109. Submitted June 22, 1983, at Detroit.—Decided
    October 14, 1983.

Roosevelt Clark was convicted of receiving and concealing stolen
    property with a value over $100, Recorder's Court of Detroit,
    Clarice Jobes, J. A stolen vehicle was recovered in his garage
    when police executed a search warrant based on information
    supplied by a police officer who lived across the street from
    defendant and who observed the vehicle in defendant's garage
    with the aid of binoculars at times when the garage door was
    up and his view was unobstructed. Defendant appealed, alleg-
    ing error in the trial court's refusal to suppress the evidence
    and ineffective assistance of counsel. *Held:*

    1. A search, as contemplated by the Fourth Amendment
    protection against unreasonable searches and seizures, has
    taken place where it is in an area where an individual has a
    reasonable expectation of privacy in the area searched or the
    materials seized, but what a person knowingly exposes to the
    public, even in his own home or office, is not subject to Fourth
    Amendment protection. There is no single factor which is
    determinative of an individual's reasonable expectation of pri-
    vacy in determining whether an unreasonable search as prohib-
    ited by the Fourth Amendment has occurred, but among the
    factors to be considered are: whether the area searched was
    within the curtilage of a residence or was open to view from a
    public area, whether the property searched was owned by the
    defendant or was in some way controlled by him, whether the
    defendant had a subjective expectation of privacy in the area
    searched, whether the area searched was enclosed, posted

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error § 166.
    5 Am Jur 2d, Appeal and Error § 704.
[2] 68 Am Jur 2d, Searches and Seizures §§ 8, 16.
[3] 68 Am Jur 2d, Searches and Seizures §§ 8, 16, 20, 21.
[4] 68 Am Jur 2d, Searches and Seizures § 25.
    Observation through binoculars as constituting unreasonable
    search. 48 ALR3d 1178.
[5] 21A Am Jur 2d, Criminal Law §§ 984, 985.

against trespass, or frequented by neighbors or strangers, and whether there were obstructions to viewing into the area. The use of binoculars to enhance a police officer's observation of a person's activities outside a residence does not constitute a violation of the Fourth Amendment.

2. A defendant must show actual prejudice to prove his claim of ineffective assistance of counsel. Defendant demonstrated no prejudice.

Affirmed.

1. APPEAL — CRIMINAL LAW — SUPPRESSION OF EVIDENCE.

A trial court's ruling on a motion to suppress evidence will not be reversed unless it is clearly erroneous; a ruling is clearly erroneous where the reviewing court is firmly convinced that a mistake has been made.

2. SEARCHES AND SEIZURES — REASONABLE EXPECTATION OF PRIVACY — CONSTITUTIONAL LAW.

A search, as contemplated by the Fourth Amendment protection against unreasonable searches and seizures, has taken place where it is in an area where an individual has a reasonable expectation of privacy in the area searched or the materials seized, but what a person knowingly exposes to the public, even in his own home or office, is not subject to Fourth Amendment protection.

3. SEARCHES AND SEIZURES — REASONABLE EXPECTATION OF PRIVACY — TRESPASS.

There is no single factor which is determinative of an individual's reasonable expectation of privacy in determining whether an unreasonable search as prohibited by the Fourth Amendment has occurred, but among the factors to be considered are: whether the area searched was within the curtilage of a residence or was open to view from a public area, whether the property searched was owned by the defendant or was in some way controlled by him, whether the defendant had a subjective expectation of privacy in the area searched, whether the area searched was enclosed, posted against trespass, or frequented by neighbors or strangers, and whether there were obstructions to viewing into the area.

4. SEARCHES AND SEIZURES — CONSTITUTIONAL LAW — INVASION OF PRIVACY — BINOCULARS.

The use of binoculars to enhance a police officer's observation of a person's activities outside a residence does not constitute a violation of the Fourth Amendment.

5. CRIMINAL LAW — ASSISTANCE OF COUNSEL — PREJUDICE.
   A defendant must show actual prejudice to prove his claim of
   ineffective assistance of counsel.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Carolyn Schmidt,* Assistant Prosecuting Attorney, for the people.

*Mark Granzotto,* for defendant on appeal.

Before: V. J. BRENNAN, P.J., and WAHLS and M. E. DODGE,* JJ.

PER CURIAM. Defendant appeals as of right a conviction for receiving and concealing stolen property with a value over $100. MCL 750.535; MSA 28.803. Defendant was also charged with unlawfully driving away a motor vehicle, MCL 750.413; MSA 28.645, however, after a bench trial, the trial judge concluded there was insufficient evidence to sustain a conviction on the charge. Defendant was sentenced to three years probation on the aforementioned conviction.

Defendant brings before this Court two allegations of error. First, defendant contends that the seizure of the car and his arrest were illegal since they resulted from the use of binoculars by a Detroit police officer without a warrant, violative of defendant's constitutional right to be free from unreasonable searches and seizures. Second, defendant argues he was denied effective assistance of counsel due to a conflict of interest which existed for his trial counsel. For reasons set forth below, we affirm.

Defendant's problems began when a motor vehicle, a silver 1980 Lincoln Mark VI, which had

---

* Circuit judge, sitting on the Court of Appeals by assignment.

been reported stolen, was recovered in his garage. Detroit police officers obtained and executed a search warrant to recover the vehicle and effect the arrest.

The warrant to search defendant's property was secured based on the information supplied by a fellow officer, Officer Traskel. Officer Traskel resides almost directly across the street from defendant. Officer Traskel testified at trial that on July 16, 1980, the same day on which the vehicle was reported stolen, he observed defendant driving a silver, 1980 Lincoln automobile onto his driveway and into his garage. Officer Traskel was off duty and at home at the time. He further testified that the defendant closed the garage door and stationed his dog in front of the door. He had not seen defendant with the vehicle before.

The following day, July 17, 1980, Officer Traskel, again off duty, observed defendant on two separate occasions showing the vehicle to two different sets of male individuals. Later the same day, Officer Traskel obtained a set of binoculars for the purpose of obtaining the license number on the vehicle. The defendant returned to his garage and Officer Traskel obtained the number.

Officer Traskel called his station, requested a LEIN check on the plate number and received a return call informing him that the vehicle had been reported stolen. Thereupon, the officer notified an officer at the Fifteenth Precinct station who subsequently swore out and executed a warrant to search defendant's premises. When the officers arrived at defendant's residence on July 18, 1980, they found the vehicle still in the garage. A search of the premises revealed papers bearing the name of the true owner stuffed inside a nearby tire. Defendant was arrested and charged.

Prior to trial, defendant moved to suppress the evidence, arguing that the use of the binoculars by Officer Traskel constituted an illegal and unconstitutional search or seizure. The trial court denied the motion. At trial, defendant moved for a dismissal at the close of the prosecutor's case. Defendant's motion, based again on the use of the binoculars, was denied.

Defendant testified at trial that a man named "Ray", whose last name he did not know, brought the car to his house. Defendant testified that he met "Ray" through other people from the Eastern Market, where defendant worked. Defendant also testified that "Ray" had visited his house on two or three occasions prior to bringing over the car. When "Ray" brought the car to defendant's house, he paid defendant $40 and told him to hide the car because it was about to be repossessed. Defendant denied knowing that the vehicle was stolen and testified that he displayed the vehicle to his friends because it was a remarkable and fascinating car.

Leon Williams, a friend of defendant, testified that he was at defendant's home sometime in July or June, when he saw a red car and a silver Lincoln approaching the premises. He testified that he observed the Lincoln pull onto the driveway, but could not recall a description of the two drivers. Williams testified that later the same day defendant telephoned him to come over and see the vehicle and he did so.

Subsequent to trial, defendant filed a motion for a new trial through appellate counsel. Defendant argued that he was denied effective assistance of counsel due to a conflict of interest affecting his trial attorney. At the evidentiary hearing on the motion, defendant testified that he first learned

about the Lincoln from his brother-in-law, Julius Reed; that Reed set up the storage of the vehicle for "Ray", who did not put the car into his garage until July 18, the day defendant was arrested; and that defendant's trial attorney was representing Mr. Reed on an unrelated criminal matter. Defendant testified that he told his trial attorney of Reed's involvement.

On cross-examination, defendant admitted that he did not tell the whole story at trial; the involvement of his brother-in-law was omitted because he did not want to get his wife involved.

The trial court took judicial notice that defendant's trial attorney represented Reed on an unrelated prosecution for receiving and concealing stolen property. The trial attorney testified that he was unaware that Reed was connected with defendant's case and that, had he known, he would have withdrawn. The trial judge denied defendant's motion.

Defendant seeks review from this Court on both issues.

We consider defendant's argument on these matters by first noting that it is the responsibility of this Court to sustain the findings of the trial judge unless we are convinced from a reading of the record that the conclusions of the trial court are clearly erroneous. *People v Grimmett,* 97 Mich App 212; 293 NW2d 768 (1980), *cert den* 411 Mich 853 (1981). The trial court clearly errs when the reviewing court is left with a firm conviction that a mistake has been made. *People v Goss,* 89 Mich App 598, 601; 280 NW2d 608 (1979).

In the present case, defendant argues that the visually enhanced observations by Officer Traskel from his own home constitute a search without a warrant. The threshold question is whether obser-

vation by means of binoculars constitutes the type of intrusion against which the Fourth Amendment protects.

Under the Fourth Amendment, a search occurs when an individual has a reasonable expectation of privacy in the area examined. *Katz v United States,* 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967).

The pre-*Katz* cases by the United States Supreme Court held that surveillance of any kind without a physical trespass was not a Fourth Amendment search. See *On Lee v United States,* 343 US 747; 72 S Ct 967; 96 L Ed 1270 (1952). *United States v Lee,* 274 US 559; 47 S Ct 746; 71 L Ed 1202 (1927). These decisions were based upon a theory of the Fourth Amendment which relied heavily on common-law notions of trespass.

*Katz* broadened the concept of privacy by eliminating the trespass element:[1]

"What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. * * * But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." 389 US 351-352.

The dispositive formula since *Katz* contains two requirements; first, that "a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable' ". *Katz, su-*

---

[1] Although the Fourth Amendment emphasis shifted from places to people, two "place oriented" expectations have survived the *Katz* analysis. The "open fields" doctrine and the "plain view" doctrine validate searches without a warrant in certain situations; they are grounded on the notion that people do not have a legitimate expectation of privacy which society is prepared to recognize as reasonable in open and accessible areas. See *People v Ward,* 107 Mich App 38; 308 NW2d 664 (1981).

*pra,* p 361 (Harlan, J., *concurring in result).* See also *Smith v Maryland,* 442 US 735; 99 S Ct 2577; 61 L Ed 2d 220 (1979).

This Court has ruled that, as to the home, society is prepared to recognize an inference of privacy, so that, absent recognized exceptions, a search may not take place without a warrant. *People v Beachman,* 98 Mich App 544; 296 NW2d 305 (1980); *People v Dugan,* 102 Mich App 497; 302 NW2d 209 (1980), *cert den* 455 US 927; 102 S Ct 1292; 71 L Ed 2d 471 (1981). Compare *United States v United States Dist Court for Eastern Dist of Michigan,* 407 US 297; 92 S Ct 2125; 32 L Ed 2d 752 (1972). However, we noted that away from the four walls of the home, the determination of a reasonable privacy expectation varies with the circumstances.[2]

"There is no single factor which is determinative of an individual's reasonable expectation of privacy. Among the factors mentioned by various courts are: whether the area is within the curtilage of a residence, whether it is open to view from a public area, whether the property was owned by the defendant or in some way controlled by him, whether the defendant had a subjective expectation of privacy, whether the area was enclosed, whether the area was posted against trespass, whether there were obstructions to vision, or whether the area was in fact frequented by neighbors or strangers. We also recognize that a person may permit or even invite intrusion by friends or neighbors into areas as to which he has a reasonable expectation of privacy regarding intrusion by authorities. *People v Hopko,* 79

[2] We note that in applying the circumstances test our findings have varied even when the places were similar. See *People v Chapman,* 73 Mich App 547; 252 NW2d 511 (1977). Compare *People v Dugan,* 102 Mich App 497; 302 NW2d 209 (1980), *lv den* 411 Mich 989 (1981), *cert den* 455 US 927; 102 S Ct 1292; 71 L Ed 2d 471 (1981) (garage). See also *People v Murphy,* 87 Mich App 461; 274 NW2d 819 (1978), *lv den* 406 Mich 991 (1979). Compare *People v Hopko,* 79 Mich App 611; 262 NW2d 877 (1977), *lv den* 402 Mich 9500 (1978) (areas beyond home).

Mich App 611; 262 NW2d 877 (1977)." *People v Dinsmore,* 103 Mich App 660, 669; 303 NW2d 857 (1981).

Applying the foregoing factors to the present case, we agree with the trial court that defendant did not have a reasonable expectation of privacy with respect to the vehicle in his open garage. We hold that the use of binoculars by Officer Traskel on these facts did not constitute a search.[3]

It is firmly established that the law offers no protection to items which a person "knowingly exposes to the public". *Katz, supra,* p 351; *People v Brewer,* 112 Mich App 670, 672; 317 NW2d 218 (1981). The record indicates that defendant's garage was visible to any neighbor or passerby. There were no obstructions to vision between the garage and the public street once the door was opened. Defendant could not reasonably expect that passersby would shut their eyes to what was clearly visible from the sidewalk or from across the street. Compare *People v Hopko, supra.* Therefore, what is visible by the general public is visible without a warrant by the police as well.[4]

It is important here to specify the nature of the police activity that is challenged by defendant. Defendant does not challenge the unenhanced visual observations of Officer Traskel; he claims rather to have a privacy expectation only to those observations enhanced with the aid of binoculars. This Court rejected a similar Fourth Amend-

[3] This precise issue has been decided often in the federal courts with similar results. *United States v Gibson,* — US App DC —; 636 F2d 761 (1980); *United States v Allen,* 633 F2d 1282 (CA 9, 1980); *United States v Minton,* 488 F2d 37, 38 (CA 4, 1973); *United States v Grimes,* 426 F2d 706 (CA 5, 1970).

[4] While not presented for review, we note that this outcome is unaffected by the off duty status of Officer Traskel. A private citizen could well have obtained the license number to aid the authorities in recovery of the vehicle.

ment claim in *People v Ward,* 107 Mich App 38; 308 NW2d 664 (1981). In *Ward,* the defendant's vehicle was located in a driveway when an officer who was part of a surveillance team took pictures of the vehicle using a telephoto lens from a neighbor's yard 125 feet away. This Court held that the defendant did not have a reasonable expectation of privacy:

"We observe that a defendant may have a reasonable expectation of privacy in secluded areas outside the four walls of his home. Where a defendant conducts activities that are within the view of passersby and neighbors, we find that no reasonable expectation of privacy exists. In the instant case, defendant's car was parked in the driveway of Seaver's home where it could be seen and photographed from a neighbor's house. Thus, the neighbor could have made the same observations. Accordingly, we find that no reasonable expectation of privacy existed and that the use of the telephoto lens to enhance the viewing officer's observations was not violative of defendant's rights." 107 Mich App 50.

The rationale of *Ward* is applicable in the present case. The record states that Officer Traskel's house was approximately 150 feet from defendant's garage and 40 feet from the street. When defendant voluntarily opened the door of the garage and exposed the vehicle and its license number to the public, he assumed the risk that his activities concerning the car would be observed. The officer's use of binoculars is permissible in this factual setting; they merely magnify what would in any event be apparent to the naked eye. See *United States v Christensen,* 524 F Supp 344 (ND Ill, 1981). Compare *People v Arno,* 90 Cal App 3d 505; 153 Cal Rptr 624 (1979).

We do not hold that every use of binoculars is not a search. A probing, exploratory quest for evidence which violates one's reasonable expecta-

tion of privacy is a search under the Fourth Amendment, irrespective of whether a surveillance instrument is utilized. See *People v Whalen,* 390 Mich 672; 213 NW2d 116 (1973). But when, as in the present case, a subject has no reasonable privacy expectation, a search in a constitutional sense does not occur. The means, therefore, of conducting the probe are not subject to strict scrutiny.[5]

Finally, we reject defendant's argument that his conviction should be reversed and a new trial ordered because he was denied effective assistance of counsel. Defendant bases his claim of error on an alleged conflict of interest involving his trial attorney, who apparently was representing defendant's brother-in-law in an unrelated matter, without knowledge that he also had a role in the events which led to defendant's arrest and conviction.

In order for ineffective assistance of counsel to result, there must be a showing of actual prejudice. *People v Mendez,* 101 Mich App 735, 737; 300 NW2d 327 (1980). After reviewing the records and the briefs, we find that defendant has failed to make such a showing. Defendant admits that of his own volition he omitted reference to Reed at trial. We find no error in the conclusion of the trial judge that defendant also failed to mention Reed's involvment to his trial attorney.

Affirmed.

---

[5] We note here that defendant's reliance on *People v White,* 392 Mich 404; 221 NW2d 357 (1974), and *People v Dugan,* 102 Mich App 497; 302 NW2d 209 (1980), *lv den* 411 Mich 989 (1981), *cert den* 455 US 927; 102 S Ct 1292; 71 L Ed 2d 471 (1981), is misplaced. In *White,* "the focus of the appellate inquiry was on the reasonableness of the police conduct rather than on a reasonable expectation of privacy by the defendant". *People v Dinsmore,* 103 Mich App 660, 669; 303 NW2d 857 (1981), *lv den* 411 Mich 1071 (1981). In *Dugan,* this Court clearly distinguishes its facts from those in the present case at page 506, *inter alia,* the absence of "testimony to indicate that the snowblower could be seen from outside of defendant's property".